**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  lrosen@rosenlegal.com
Email:  pkim@rosenlegal.com

Counsel for Plaintiff Franklin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES FRANKLIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>            Plaintiff,<br>   vs.<br><br>CENTRAIS ELÉTRICAS BRASILEIRAS S.A. – ELETROBRAS,  JOSE DA COSTA CARVALHO NETO, AND ARMANDO CASADO DE ARAUJO,<br><br>            Defendants. | CASE No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Franklin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which includes without limitation: (a) review and analysis of regulatory filings made by Centrais Elétricas Brasileiras S.A. – Eletrobras ("Eletrobras" or the "Company"), with the United States Securities and Exchange

Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Eletrobras; and (c) review of other publicly available information concerning Eletrobras.

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired Eletrobras ADSs between February 10, 2014 and April 29, 2015, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

2.     Eletrobras is Brazilian electric company composed of several subsidiaries created by the Brazilian government in 1962. Eletrobras builds and operates power plans, electric power transmission and distribution lines. Eletrobras' American Depositary Shares ("ADSs") are listed on the New York Stock Exchange ("NYSE") and traded under the ticker "EBR."

3.     Through its subsidiary, Eletrobras Termonuclear S.A. – Eletronuclear ("Eletronuclear"), Eletrobras operates the nuclear power plants – Angra I, Angra II, and Angra III, which is currently being built. According to the Company's Form 20-F for the year ending December 31, 2013 filed with the SEC, Eletrobras owns 99.9% of Eletronuclear and expects its holding to continue as such.

4.     During the Class Period, Defendants made materially false and misleading statements by misrepresenting facts and failing to disclose a bribery scheme. Specifically, the CEO of Eletronuclear, Othon Luiz Pinheiro da Silva, was accepting bribes from a consortium of constriction companies hired to construct Angra III.

5.     In addition, the illegal bribery scheme violated representations made by Defendants

to Eletrobras investors concerning the Company's adherence to its corporate governance and Code of Ethics. The Company purports to maintain high standards for its corporate governance, stating on its website:

> Ethics, transparency, equity, accountability and corporate responsibility are the principles that guide Eletrobras's corporate governance model.
>
> Here you can find Eletrobras's By-laws, Code of Ethics and Manual for Communication of Material Facts and Policy on Trading in Securities Issued as well as information regarding the Board of Directors meetings and general and ordinary shareholders meetings.

<http://www.eletrobras.com/elb/ri/data/Pages/LUMISB877EC49ENIE.htm>:

6.      In addition, the Company has published as of 2010 its "Code of Ethics – Ethical Principles and Conduct Commitments" as it holistically applies to "all members of the Board of Directors, directors, board members, employees, third-party staff, service providers, trainees and young apprentices." The Code of Ethics applies to all Eletrobras subsidiaries, including Eletronucler, and outlines ethical principles stated in relevant part:

ETHICAL PRINCIPLES

I. HUMAN DIGNITY AND RESPECT TO PEOPLE
Valuing life and affirming citizenship, respecting the physical and moral integrity of all people, their individual differences and the diversity of social groups in an equal, equitable and fair manner.

II. INTEGRITY
Complying with commitments undertaken to honesty and probity, in which discourse and actions are coherent, and repudiating any manner of fraud and corruption by maintaining an active stand under situations which are not in compliance with the ethical principles.

III. SUSTAINABILITY
Operating through a well-balanced environmental, social and ethical responsibility, respecting the right to a full life for present generations and contributing to life preservation for future generations.

### IV. TRANSPARENCY
Ensuring visibility of criteria, which charter the decisions made and actions taken by Eletrobras Companies by communicating in a clear, accurate, agile and accessible manner, taking into account the limits to the right of confidentiality.

### V. IMPARTIALITY
Establishing that public interests must be above personal ones in order to ensure objectivity and impartiality in decisions, actions and in the use of resources from Eletrobras Companies.

### VI. LEGALITY
Complying with Brazilian laws and with the legislation of countries in which Eletrobras Companies operate, as well as with internal norms which regulate the activities of each company, in accordance with Brazilian constitutional principles and international treaties entered by Brazil.

### VII. PROFESSIONALISM
Performing in a professional manner, with integrity, responsibility and care, based on social values, loyalty and mutual respect, in which the excellence and development of Eletrobras Companies are a common commitment.

7.     The Code of Ethics also includes that all Eletrobras companies are forbidden from engaging in bribery and corruption stating in relevant part that employees must engage in "[r]efusing and denouncing any form or attempt of corruption, bribery, kickback and 'back-scratching.'"

8.     As of November 14, 2014, the Brazilian Federal Police, under "Operação Lava Jato" also known as "Operation Lava Jato" and "Operation Car Wash," has arrested at least 24 suspects in connection with the money laundering and bribery scheme.

9.     News reports surfaced that Dalton Avancini, the former president of Camargo Corrêa, a Brazilian conglomerate, entered into a plea bargain with the Brazilian government in connection with Operation Car Wash and told the government that when Eletronuclear hired a consortium for the construction of the Angra III nuclear power plant, there were bribes given to Eletronuclear's CEO, Othon Luiz Pinheiro da Silva.

4

10.     On April 30, 2015, Eletrobras announced to investors that due to these news reports about bribery taking place at Electronuclear, the Company would not be filing its Form 20-F on time and needed the additional time to make sure the proper auditing procedures were being followed. That same day, Electrobas filed a Form NT-20F with the SEC stating it needed an extension to file its Form 20-F for the year ending December 31, 2014.

11.     On this news, the Company's ADSs declined $0.22 per ADS, or over 8%, to close at $2.45 per ADS on April 30, 2015.

12.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and financial performance. Specifically, Defendant made false and/or misleading statements and/or failed to disclose that: (1) the Company's senior officials were in non-compliance with the Company's corporate governance directives and Code of Ethics; (2) as a result, the Company was subject to investigation and disciplinary action by various governmental and regulatory authorities; (3) the Company's financial statements were materially false and misleading as they contained direct references to the Company's Code of Ethics, and statements regarding its compliance with regulations and internal governance policies; (4) the Company lacked adequate internal and financial controls; (5) the SOX certifications signed by Eletrobras' senior management were materially false and misleading as senior management was aware of "any fraud, whether or not material"; and (6), as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

13.     As a result of Defendant's wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §7Saa).

16.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) as a substantial part of the conduct complained of herein occurred in this District. Among other things, Eletrobras's ADSs are listed on NYSE, which is located within this District.

17.     Eletrobras is not immune from suit in the United States under the Foreign Sovereign Immunities Act ("FSIA") as Eletrobras engages in commercial activity, both in the United States and elsewhere having a direct effect in the United States. *See* 28 U.S.C. §1605(a)(2).

18.     In connection with the acts, transactions, and conduct alleged herein, Defendant directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

19.     Plaintiff James Franklin, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased Eletrorbas ADSs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

20.     Defendant Eletrobras is a Brazilian electric company with its principal executive

6

offices in Rio de Janeiro, Brazil. Eletrobras ADSs trade on the NYSE under the ticker "EBR."

21.    Defendant Jose da Costa Carvalho Neto ("Carvalho Neto") was the Chief Executive Officer ("CEO") of Eletrobras at all relevant times.

22.    Defendant Armando Casado de Araujo ("Araujo") was the Chief Financial Officer ("CFO") of Eletrobras at all relevant times.

23.    Defendants Carvalho Neto and Araujo are sometimes collectively referred to hereinafter as the "Individual Defendants."

24.    Defendants Eletrobras, Carvalho Neto, and Araujo are collectively referred to hereinafter as "Defendants."

25.    Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f) approved or ratified these statements in violation of the federal securities laws.

26.     As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and were traded on NYSE and governed by the provisions of the federal securities laws, the Individual Defendants

each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

27.     Eletrobras is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

28.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Eletrobras under respondeat superior and agency principles.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

29.     The Class Period starts on February 10, 2014, when Eletrobras issued a press release announcing the winning bid for electromechanical assembly services for Angra III. The press release, translated, states:

> Bidding sets companies responsible for electromechanical assembly services Angra 3
>
> On 30 June, was published in the Official Gazette, the result of the tender for the execution of electromechanical assembly services for nuclear power plant Angra 3. In total, two service packages, a reference to the primary circuit of the plant (system steam generation from nuclear source) and another related to the secondary circuit (conventional plant systems). Together, the value of the packages is $ 3 billion.
>
> The result of the bidding consortium defines the Angra 3 - formed by EBE companies, Techint and Queiroz Galvão - as responsible for services associated with nuclear systems. ***As for the assemblies of conventional systems, was selected UNA 3 consortium - composed of construction companies Andrade Gutierrez, Norberto Odebrecht, Camargo Correa and UTC Engenharia.***

8

> *The hiring process is in the final assessment phase by the Executive Board and the Board of Directors of Eletronuclear*. It is expected that the signing of contracts happen soon.
>
> (emphasis added).

30.     On April 30, 2014, the Company filed its annual report for the year ended December 31, 2013 on a Form 20-F with the SEC (the "2013 20-F"). The 2013 20-F was signed by Defendants Carvalho Neto and Araujo.  The Form 20-F stated the Company's financial results and financial position.

31.     The 2013 20-F contained signed SOX certifications by Defendants Carvalho Neto and Araujo. The SOX certifications stated that the financial information contained in the 2013 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting. Specifically, the certifications represented that the 2013 20-F did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." The certifications also stated that Carvalho Neto and Araujo have disclosed "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information" and "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting." Carvalho Neto and Araujo's statements were attributable to the Company.

32.     In addition, the 2013 20-F stated that "there have been no changes in our internal control over financial reporting that occurred during the year ended December 31, 2013 that have materially affected or are reasonably likely to materially affect our internal control over financial

reporting as of December 31, 2013."

33.     The 2013 20-F discusses the construction of Angra III, stating in relevant part:

> Through Eletrobras Eletronuclear, we operate two nuclear power plants, Angra I, with an installed capacity of 640 MW and Angra II, with 1,350 MW. ***In addition, Eletrobras Eletronuclear started the construction of a new nuclear plant, called Angra III, during the second half of 2009.*** The construction is estimated to take between 3 and 5.5 years. On March 5, 2009, IBAMA issued an installation license to Eletrobras Eletronuclear with a validity of 6 years and on March 9, 2009, CNEN issued a partial construction license to Eletrobras Eletronuclear. Once constructed, we estimate that Angra III will have an installed capacity of 1,405 MW and that the cost of its construction will be approximately R$13.1 billion

> (emphasis added).

34.     The 2013 20-F incorporated Eletrobras's Code of Ethics, available on the Company's corporate website and stated that "[w]e have adopted a code of ethics that applies to all our employees, including our chief executive officer, chief financial officer, principal accounting officer and persons performing similar functions, as well as to directors and other officers." The 2013 20-F represented that the Company adopted the Code of Ethics to apply to all Eletrobras employees.

35.     On September 3, 2014, the Company issued a press release to its website, which translated, states in part:

> Consortia Angra 3 and 3 Una sign contracts to begin electromechanical assembly plant Angra 3

> ***The Queiroz Galvão; Empresa Brasileira de Engenharia - EBE; and Techint Engineering (Consortium Angra 3) and more construction companies Andrade Gutierrez; Norberto Odebrecht; Camargo Correa; and UTC Engenharia (Consortium Una 3) signed yesterday (September 2, 2014) contracts for execution of electromechanical assembly plant Angra 3.***

Investment Eletronuclear this stage of construction of the plant - the largest of the enterprise service agreement - is of R $ 2.9 billion (basis for calculation: February 2013).

The services to be provided by such companies contains the electromechanical assembly of the systems associated with the primary circuit, which will cover the activities associated with the nuclear part and assemblies associated with conventional power plant systems. According to agreement between the winning companies and Eletronuclear fell by 6% of the amount originally proposed by agreement that the work is carried out in shared management arrangements.

The contracts provide for a total period of 58 months to perform, among others, the following services: assembly components; pipes; valves; cable trays; Pipe holders and trays; Installation process equipment; electrical panels; Release trays and electrical cables and instrumentation and control systems; ventilation and air conditioning facilities; execution of thermal insulation and industrial paints; as well as to support commissioning testing activities.

The notice was published in August 2011 and were lodged numerous resources by non-qualified companies. On July 3, 2014 the result of the bid was approved by the Board of Directors of Eletronuclear.

(emphasis added).

36.     The above statements in ¶29- ¶35 were materially false and misleading when made because the Company failed to disclose or indicate the following: (1) the Company's senior officials were in non-compliance with the Company's corporate governance directives and Code of Ethics; (2) as a result, the Company was subject to investigation and disciplinary action by various governmental and regulatory authorities; (3) the Company's financial statements were materially false and misleading as they contained direct references to the Company's Code of Ethics, and statements regarding its compliance with regulations and internal governance policies; (4) the Company lacked adequate internal and financial controls; (5) the SOX certifications signed by Eletrobras' senior management were materially false and misleading as senior management

was aware of "any fraud, whether or not material"; and (6), as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### THE TRUTH EMERGES

37.    On April 30, 2015, Eletrobras issued a press release announcing that the Company was investigating allegations that Electronuclear's CEO, Othon Luiz Pinheiro da Silva, was accepting bribes for the construction of Angra III, which was filed as a Form 6-K with the SEC. The press release states:

> Certain news articles were published in the press in relation to the alleged plea bargain [sic] entered into by the former president of Camargo Corrêa, in the context of Operation "Lava Jato", ***stating that at the time that Eletrobras Termonuclear S.A – Eletronuclear ("Eletronuclear") hired a consortium for the construction of the mechanical assembly of the Angra 3 nuclear power plant, there were discussions negotiating the payment of alleged bribes to the CEO of Eletronuclear, Othon Luiz Pinheiro da Silva***. In light of these allegations, the Company hereby clarifies to our investors and to the market the following:

> As already stated in Note 4 to the Financial Statements as of and for the year ended December 31, 2014, filed with the CVM on March 27, 2015, the Company has been following all of the news published by the press. Accordingly, ***an internal commission was created under the Company's Compliance Program to investigate the procurement process related to the hiring of construction companies in relation to the construction of Angra 3. The work of that commission is ongoing***.

> In addition, the Company requested in March 2015 that the Federal Prosecutors and the Federal Police inform Eletrobras (i) if there is any information or evidence in the context of Operation "Lava Jato" which may affect the Eletrobras Companies or any specific purpose entities in which the Company holds equity interest and (ii) if affirmative, that Eletrobras be given access to these documents. To date, the Federal Prosecutors have not responded to these requests.

> On March 26, 2015, the Federal Police responded and stated that the investigations into operation "Lava Jato" are confidential and there is no court order allowing for any such information to be shared with Eletrobras or for Eletrobras to have access to any police investigation documents. Accordingly, the Federal Police cannot provide any information.

However, considering that the news reports reference excerpts from the alleged plea bargain [sic] entered into by the former president of Camargo Corrêa in confidential depositions made to the Federal Police in the context of operation "Lava Jato," the management of the Company has decided that it will reiterate its request to the Federal Police for access to any relevant documents made available to the media.

Despite the fact that the Company's commission's investigations have not been concluded, the Board of Directors of Eletrobras approved today all measures necessary to engage a specialized and independent entity to conduct an investigation to ensure transparency and independence, as required by Brazilian and U.S. laws.

The president of Eletronuclear, Mr. Othon Luiz Pinheiro da Silva, decided to take leave today to ensure the transparency of the work currently being conducted by the internal investigation, as well as the independence of the work to be conducted by the independent entity to be hired.

The Board of Directors of the Eletronuclear has approved the interim appointment of Mr. Pedro José Diniz, Chief Operational Officer of Eletronuclear, to act as president of Eletronuclear.

In addition, further to the *Comunicado ao Mercado* published on April 28, 2015 and, for the reasons mentioned above, the Company confirms that its Form 20-F will not be filed with the SEC by April 30, 2015, as the Company understands that further results from the investigation should be obtained. Accordingly, a Form 12b-25 will be filed by April 30, 2015.

The Company will keep the market informed of the developments of these matters, reiterating to its investors the Company's commitment to transparency and ethic conduct in its business.

(emphasis added).

38.    Also on April 30, 2015, the Company filed Form NT-20F, a Notification of Late Filing, with the SEC stating the Company will not be filing its Form 20-F on time for the year ending December 31, 2014. The Form NT-20F states in part:

State below in reasonable detail why Forms 10-K, 20-F, 11-K, 10-Q, 10-D, N-SAR, N-CSR, or the transition report or portion thereof, could not be filed within the prescribed time period.

The statutory auditor of Energia Sustentável do Brasil Participações S.A. ("Jirau"), which is a significant affiliate of Centrais Elétricas Brasileiras S.A. – ELETROBRAS (the "Company") under Rule 3-09 of Regulation S-X, recently informed us that it did not consider itself independent under the relevant U.S. independence rules. Consequently, the Company has appointed another audit firm to audit the financial statements of Jirau for purposes of applying equity method accounting to the Company's consolidated financial statements. Accordingly, the Company will wait for the conclusion of the audit process for Jirau before finalizing its Form 20-F as of and for the year ended December 31, 2014.

***In addition, the Company recently became aware of press reports stating that the former CEO of Camargo Corrêa allegedly stated in his testimony in relation to Operação Lava-Jato (Operation Car Wash) that the consortium of companies bidding for the mechanical assembly of the Angra 3 power plant allegedly made illegal payments to the CEO of our wholly owned subsidiary, Eletrobras Thermonuclear S.A. – Eletronuclear ("Eletronuclear").*** The CEO of Eletronuclear has requested leave of absence. The internal committee established by the Company to investigate any allegations made in the press in relation to Operação Lava-Jato (Operation Car Wash) has not yet concluded its internal investigation and the Company's Board of Directors, to which such internal committee reports, has provided authorization for the Company to take all necessary measures to engage a specialized independent firm to conduct an external investigation into these allegations. ***Accordingly, the Company is unable to file its Form 20-F as of and for the year ended December 31, 2014 by April 30, 2015***.

(emphasis added.)

39.     On this news, the Company's ADSs declined $0.22 per ADS, or over 8%, to close at $2.45 per ADS on April 30, 2015.

## LOSS CAUSATION

40.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated the prices of Eletrobras' ADSs, which operated as a fraud or deceit on Class Period purchasers of Eletrobras' ADSs by failing to disclose, and misrepresenting, the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed, or materialized, and became apparent

to the market, the price of Eletrobras' ADSs fell precipitously. As a result of their purchases of Eletrobras' ADSs during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

41.    By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of Eletrobras' business and prospects, financial position, and results of operations. Defendant's false and misleading statements caused Eletrobras' ADSs to trade at artificially inflated levels throughout the Class Period.

42.    The decline in value of Eletrobras' ADSs was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline of Eletrobras' ADSs negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, i.e. damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme and caused the subsequent significant decline in the value of Eletrobras' ADSs when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased Eletrobras ADSs during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15

44.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by Eletrobras  or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Eletrobras;

- whether the Individual Defendants caused Eletrobras to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of Eletrobras securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Eletrobras securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

-  the Company traded on NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Eletrobras securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

17

51.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

52.     At all relevant times, the market for Eletrobras' ADSs was an efficient market for the following reasons, among others:

53.     As a result of the foregoing, the market for Eletrobras' ADSs promptly digested current information regarding Eletrobras from all publicly available sources and reflected such information in Eletrobras' ADSs price. Under these circumstances, all purchasers of Eletrobras' ADSs during the Class Period suffered similar injury through their purchase of Eletrobras' ADSs at artificially inflated prices, and a presumption of reliance applies.

## NO STATUTORY SAFE HARBOR

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false or misleading statements set forth in this Complaint. The statements alleged to be false or misleading herein relate to then-existing facts and conditions with respect to Eletrobras which were not fully, fairly, or adequately disclosed. In addition, to the extent certain of the statements alleged to be false or misleading may be characterized as forward looking, they were not adequately identified as "forward-looking statements" when made, and there were no adequate, meaningful cautionary statements identifying relevant important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Cautionary language must truthfully address specific risks, must exhaust the capacity of the

positive false statements to mislead investors and must disclose, as Defendants failed to do here, then existing adverse facts. Alternatively, to the extent that the statutory safe harbor is intended, to or does, apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, Defendant had actual knowledge that the particular forward-looking statement was materially false or misleading. In addition, to the extent any of the statements set forth above were accurate when made, they became inaccurate or misleading because of subsequent events, and Defendants failed to update those statements which later became inaccurate.

55.     The statutory safe harbor provided for forward-looking statements under certain circumstances, moreover, does not apply to false statements or material omissions of existing facts.

56.     Additionally, the safe harbor is statutorily inapplicable to the false, misleading, and incomplete annual financial statements of Eletrobras since they were reportedly prepared in accordance with generally accepted accounting principles.

**FIRST CLAIM**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder Against All Defendants**

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Eletrobras' ADSs at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

59.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Eletrobras' ADSs in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of Eletrobras as specified herein.

61.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eletrobras' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Eletrobras and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Eletrobras' ADSs during the Class Period.

62.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing a bribery scheme in violation of the Company's Code of Ethics thereby artificially inflating price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Eletrobras' ADSs was artificially inflated during the Class Period. In ignorance of the fact that market prices of Eletrobras' ADSs were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Eletrobras' ADSs during the Class Period at artificially high prices and were or will be damaged thereby.

65.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the bribery scheme, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Eletrobras ADSs, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

66.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

68.      This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

69.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.      The Individual Defendants acted as controlling persons of Eletrobras within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge about statements made by the Company disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71.      In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.      As set forth above, Eletrobras and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their omissions as alleged in this Complaint.

73.      By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of

Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

74.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against defendant, jointly and severally, for all damages sustained as a result of defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  July 22, 2015                             Respectfully submitted,
                                                  **THE ROSEN LAW FIRM, P.A.**
                                                   /s/Phillip Kim
                                                  Phillip Kim, Esq. (PK 9384)
                                                  Laurence M. Rosen, Esq. (LR 5733)
                                                  275 Madison Avenue, 34th Floor
                                                  New York, NY  10016
                                                  Phone: (212) 686-1060
                                                  Fax: (212) 202-3827
                                                  Counsel for Plaintiff Franklin