UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE ELETROBRAS SECURITIES
LITIGATION

Case No.: 15-cv-5754-JGK

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT**

James H.R. Windels
Antonio J. Perez-Marques
Alexander F. Mindlin

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Centrais Elétricas
Brasileiras S.A., José Antonio Muniz Lopes,
José da Costa Carvalho Neto, and Armando
Casado de Araújo*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .....................................................................................................2

ARGUMENT ..........................................................................................................4

I.    Claims Brought on Behalf of Purchasers of Eletrobras' Securities Other than ADSs Must Be Dismissed for Lack of Standing .......................4

II.    The Complaint Fails to Adequately Plead a Material Misstatement or Omission ..........................................................5

    A.    Allegations Regarding Eletrobras' Code of Ethics ..........................6

    B.    Allegations Regarding Eletrobras' Financial Statements ...............8

        1.    Plaintiffs Fail to Allege Any Particularized Facts Linking the Alleged Bribery to an Impact on the Company's Financial Statements ..........................................9

        2.    Plaintiffs Fail to Allege Any Particularized Basis for the Alleged Misstatements in the Company's PP&E or Earnings ...............................................................10

        3.    Plaintiffs Fail to Allege Any Material Financial Misstatement as to Four of the Five Projects at Issue ........11

        4.    Plaintiffs Fail to Allege a Material Misstatement as to Angra 3 .........................................................................12

        5.    Plaintiffs Fail to Allege an Actionable Misstatement as to Related-Party Transactions .......................................15

    C.    Plaintiffs Fail to Allege an Actionable Omission ..........................16

III.    The Complaint Fails to Adequately Plead Fraudulent Scienter ................17

    A.    Plaintiffs Have Not Identified Any Individual Whose Intent May Be Imputed to Eletrobras That Acted with the Requisite Scienter .......................................................................17

        1.    Scienter Has Not Been Adequately Alleged as to Defendants Lopes, Carvalho, and Araújo ..........................17

        2.    Scienter Has Not Been Adequately Alleged as to Defendant Cardeal ...........................................................19

        3.    Scienter Has Not Been Adequately Alleged Based on Non-Parties Pinheiro, Palocci, and Coelho ..................23

    B.    Plaintiffs Have Failed to Allege Scienter with Respect to the Individual Projects ..................................................................24

IV.      Plaintiffs' Section 20(a) Claim Should Be Dismissed...............................25

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

PAGE

CASES

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,
   2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ............................................................. 21

Acito v. IMCERA Grp., Inc.,
   47 F.3d 47 (2d Cir. 1995) ........................................................................................... 12

Allied Irish Banks, P.L.C. v. Citibank, N.A.,
   2015 WL 4104703 (S.D.N.Y. June 30, 2015) ...................................................... 22, 23

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ..................................................................................................... 4

Boca Raton Firefighters & Police Pension Fund v. Bahash,
   506 F. App'x 32 (2d Cir. 2012). .................................................................................. 7

Branch v. Tower Air, Inc.,
   1995 WL 649935 (S.D.N.Y. Nov. 3, 1995) ............................................................. 5, 8

Caiafa v. Sea Containers Ltd.,
   525 F. Supp. 2d 398 (S.D.N.Y. 2007) ................................................................. passim

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................... 10

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
   752 F.3d 173 (2d Cir. 2014) ........................................................................................ 7

City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ...................................................................... 11

Defer LP v. Raymond James Fin., Inc.,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009) ...................................................................... 24

ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,
   553 F.3d 187 (2d Cir. 2009) ................................................................................. 7, 16

Feasby v. Industri-Matematik Int'l Corp.,
   2000 WL 977673 (S.D.N.Y. July 17, 2000) ................................................. 8, 11, 13, 14

G-I Holdings, Inc. v. Baron & Budd,
  2004 WL 1277870 (S.D.N.Y. June 10, 2004) ............................................................... 6

Ho v. Duoyuan Glob. Water, Inc.,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012)........................................................................... 24

In re Alstom SA,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................... 24

In re Barrick Gold Sec. Litig.,
  2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015)................................................................. 11

In re CBI Holding Co., Inc.,
  529 F.3d 432 (2d Cir. 2008).......................................................................................... 21

In re China Valves Tech. Sec. Litig.,
  2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012).............................................................. 16

In re FBR Inc. Sec. Litig.,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008)........................................................................ 6, 7

In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)........................................................................... 16

In re JPMorgan Chase & Co. Sec. Litig.,
  2007 WL 4531794 (N.D. Ill. Dec. 18, 2007)................................................................ 22

In re Lehman Bros. Sec. and ERISA Litig.,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011)........................................................................... 24

In re Livent, Inc. Noteholders Sec. Litig.,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................... 12, 15, 16

In re Magnum Hunter Res. Corp. Sec. Litig.,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014).............................................................................. 18

In re Magnum Hunter Res. Corp. Sec. Litig.,
  616 F. App'x 422 (2d Cir. 2015) ............................................................................... 5, 18

In re Marsh & Mclennan,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)................................................... 17, 18, 20, 21

In re Molycorp, Inc. Sec. Litig.,
  2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) .............................................................. 24

In re Moody's Corp. Sec. Litig.,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009)............................................................. 20

In re Nokia OYJ (Nokia Corp.) Sec. Litig.,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)............................................................. 5

In re Petrobras Sec. Litig.,
    2015 WL 4557364 (S.D.N.Y. July 30, 2015) ....................................... passim

In re Petrobras Sec. Litig.,
    No. 14-cv-9662 (S.D.N.Y. Mar. 31, 2015), ECF No. 110............................. 7

In re Petrochina Co. Ltd. Sec. Litig.,
    2015 WL 46197977 (S.D.N.Y. Aug. 3, 2015) ............................................. 6

In re PXRE Grp., Ltd., Sec. Litig.,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009),
    aff'd sub nom. Condra v. PXRE Grp., Ltd., 357 Fed. App'x 393 (2d Cir. 2009) ........ 20

In re Refco Sec. Litig.,
    779 F. Supp. 2d 372 (S.D.N.Y. 2011),
    aff'd sub nom. Krys v. Butt, 486 Fed. App'x 153 (2d Cir. 2012) ............................... 22

In re Salomon Analyst Level 3 Litig.,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004)............................................................ 4

In re Vivendi Universal, S.A. Sec. Litig.,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)........................................................... 19

Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank,
    2013 WL 4856199 (S.D.N.Y. Sept. 10, 2013).............................................. 19

Janus Capital Grp., Inc. v. First Derivative Traders,
    131 S. Ct. 2296 (2011)................................................................................... 20

Kirschner v. KPMG LLP,
    15 N.Y.3d 446 (2010) ............................................................................. 21, 22

Kleinman v. Elan Corp., PLC,
    706 F.3d 145 (2d Cir. 2013)........................................................................... 25

La Pietra v. RREEF Am., L.L.C.,
    738 F. Supp. 2d 432 (S.D.N.Y. 2010)......................................................... 5, 25

Lewis v. Casey,
    518 U.S. 343 (1996)........................................................................................ 4

Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,
    576 F.3d 172 (4th Cir. 2009) ........................................................................ 18

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) ........................................................................... 5

Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,
    596 F.3d 112 (2d Cir. 2010) ......................................................................... 14

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000) .................................................................... 18, 21

Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012) ........................................................ 21

Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015) .......................................................... 18

Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010) ........................................................ 18

San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.,
    75 F.3d 801 (2d Cir. 1996) ............................................................................ 5

Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ............................................................ 8

Staehr v. Hartford Fin. Serv. Grp., Inc.,
    547 F.3d 406 (2d Cir. 2008) ......................................................................... 14

Strougo v. Barclays PLC,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015) .......................................................... 7

Tabak v. Canadian Solar Inc.,
    549 F. App'x 24 (2d Cir. 2013) ................................................................. 5, 8

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.,
    531 F.3d 190 (2d Cir. 2008) .................................................................... 17, 19

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007) ...................................................................................... 17

Valentini v. Citigroup, Inc.,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) ........................................................ 24

Yates v. Mun. Mortg. & Equity, LLC,
  744 F.3d 874 (4th Cir. 2014) ..................................................................... 19

## STATUTES & RULES

15 U.S.C. § 78j(b) ........................................................................... passim

15 U.S.C. § 78u-4(b)(1) ................................................................. 6

15 U.S.C. § 78u-4(b)(2) ................................................................. 17

15 U.S.C. § 78t ............................................................................. 25

Fed. R. Civ. P. 9(b) ................................................................ 1, 5, 6, 8

Fed. R. Civ. P. 12(b)(6) .............................................................. 1, 4

## OTHER AUTHORITIES

Randall W. Bodner et al., Corporate Scienter After Janus,
  44 Sec. Reg. & L. Report 1639 (2012) ................................................. 20, 21

Browning Jeffries, The Implications of Janus on Issuer Liability in Jurisdictions
  Rejecting Collective Scienter, 43 Seton Hall L. Rev. 491 (2013) ................................ 20

Defendants Centrais Elétricas Brasileiras S.A. ("Eletrobras" or the "Company"), José Antonio Muniz Lopes, José da Costa Carvalho Neto, and Armando Casado de Araújo (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Complaint, dated December 8, 2015 ("CAC" or the "Complaint"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, who are purchasers of American Depository Shares ("ADSs") issued by Eletrobras, a Brazilian power and utilities company, seek to bring claims under the federal securities laws against Eletrobras and certain of its current and former officers based on the Brazilian bribery investigation known as *Operação Lava Jato*, or "Operation Car Wash." The origins and focus of Operation Car Wash lie with a different Brazilian company—the state-owned oil company, Petróleo Brasileiro S.A. ("Petrobras")—and the publication of testimony providing specifics of the bribery scheme at Petrobras has given rise to significant shareholder litigation against that company in the United States.

Plaintiffs lean heavily on Operation Car Wash and the Petrobras litigation in order to bring claims against Eletrobras, seeking to present the two cases as "strikingly similar." In fact, the cases differ in critical respects. While the bribery alleged in Petrobras was broad-based, systematic, and involved numerous employees, close scrutiny of Plaintiffs' lengthy Complaint here shows that the allegations against Eletrobras are substantially narrower, more nebulous, and based on a small number of glancing references to Eletrobras in the Operation Car Wash testimony. The federal securities laws do not permit pleading by innuendo or inferences of guilt by association arising from a widely publicized government investigation. Instead, the securities laws require the pleading of particularized facts supporting the existence and materiality of misstatements to the investing public, which Plaintiffs have failed to do here.

The core of Plaintiffs' Complaint is that Eletrobras' financial statements contained material misstatements as a result of bribes paid by contractors to win construction projects. Plaintiffs create the illusion of particularity by citing specific quantitative amounts by which they claim Eletrobras misstated the costs of its projects. But Plaintiffs provide no detail, explanation, or basis for these quantifications, and when scrutinized they appear to be based on a wholly unsupported assumption by Plaintiffs that the Company's costs were inflated by a fixed percentage over a period of years. This type of speculative pleading is directly at odds with the requirements of the securities laws and the Federal Rules of Civil Procedure, which mandate that particularized facts be pled to support a claim that financial statements were materially misstated.

Plaintiffs also fail to plead fraudulent scienter, an essential element of their claim under Section 10(b) of the Securities Exchange Act of 1934, with the required particularity. Notably, Plaintiffs allege no facts whatsoever indicating that three senior officers named as defendants—Messrs. Lopes, Carvalho, and Araújo (Eletrobras' former and current chief executive officer and current chief financial officer, respectively)—were ever involved in the alleged bribery, much less that they acted with fraudulent intent. Not only should the claims against them individually be dismissed, but there is no basis to impute fraudulent scienter from them to the Company. Regarding defendant Valter Luiz Cardeal de Souza, Plaintiffs have failed to allege that in his role as Chief Generation Officer he had responsibility for Eletrobras' public statements or filings that would permit his state of mind to be imputed to the Company.

For these and other reasons, Defendants respectfully submit that the Complaint should be dismissed against them in its entirety.

## BACKGROUND

**_Projects at Issue._** The Complaint alleges bribery and bid rigging in connection with five electrical power construction projects in Brazil: Angra 3, Belo Monte, Jirau, Santo Antonio, and

2

Teles Pires.  See CAC ¶¶ 3–16.  One of these projects was undertaken by a subsidiary of Eletrobras (Angra 3) and the other four by special purpose entities ("SPEs") of which Eletrobras was a minority owner.  Plaintiffs allege that in connection with two of the projects (Angra 3 and Belo Monte), bribes were paid by construction companies to two employees of Eletrobras subsidiaries in order to secure the contracts.  See id. ¶¶ 9, 13.  Regarding the other three projects, Plaintiffs do not allege any particular bribery scheme but only that the projects are over-budget and subject to investigations.  See id. ¶¶ 56–67.

*Individuals.*  Plaintiffs assert claims against four current and former executives of Eletrobras.  Only one of those individuals, Valter Cardeal (who has not been served with the Complaint), is alleged to have been involved in any bribery.  There are no particularized allegations, however, that Cardeal had a role in connection with the alleged misstatements.  The other individual defendants are alleged to have had a role in the Company's public statements and filings but not to have been involved in any bribery.

*Alleged Misstatements.*  Plaintiffs allege that Defendants made misstatements and omissions (1) through the Company's Code of Conduct and other related public statements by the Company regarding its "transparency" and receipt of various corporate awards, and (2) in connection with the Company's financial statements.  Much of the Complaint focuses on the latter theory that bribe payments were improperly included in the capitalized costs of construction projects on the Company's balance sheet.  Plaintiffs do not allege, however, that the Company has restated its financials or attributed write-downs on its projects to the improper inclusion of bribe payments in costs.  Instead, Plaintiffs refer to an "assumed overcharge," id. ¶ 159, that they speculate occurred due to the bribery, and they apply the overcharge across multiple years of the Company's financial statements.  Despite relying heavily on press reports

and publicly available testimony, Plaintiffs identify no specific testimony or source supporting their allegation that bribes were improperly included in the Company's capitalized costs. The two sources Plaintiffs purport to cite for that proposition do not support their claim. See infra n.7.

## ARGUMENT

To survive a motion pursuant to Rule 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is not enough to plead facts that are "merely consistent with" a right to relief. Instead, a plaintiff must allege facts "plausibly suggesting" liability. Id. at 557. The allegations must do more than "merely creat[e] a suspicion [of] a legally cognizable right of action"; they must present facts constituting "plausible" grounds for relief. Id. at 556.[1]

## I.   Claims Brought on Behalf of Purchasers of Eletrobras' Securities Other than ADSs Must Be Dismissed for Lack of Standing

In a putative class action, at least one named plaintiff must have standing to bring the claims pursued on behalf of the class. In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004). A named plaintiff lacks standing to bring claims based on securities in which it did not invest. Id. at 497; see generally Lewis v. Casey, 518 U.S. 343, 357 (1996).

Plaintiffs here purport to assert claims on behalf of "all persons who purchased the U.S. exchange-traded securities of Eletrobras" during the Class Period, CAC ¶ 2, and they allege that purchasers of both Eletrobras' ADSs and bonds suffered losses due to Defendants' conduct, id. ¶ 38. But they do not allege that any named plaintiff transacted in any of Eletrobras' securities other than ADSs. See Fox Decl. in Supp. of Mot. to Consol., Exs. B, C, ECF Nos. 16-2, 16-3.

---

[1] Unless otherwise indicated, internal quotation marks have been omitted throughout this memorandum.

Plaintiffs' claims on behalf of purchasers of any Eletrobras securities other than ADSs must be dismissed for lack of standing.

## II.   The Complaint Fails to Adequately Plead
a Material Misstatement or Omission

To state a claim under Section 10(b), a plaintiff must plausibly allege that the defendant made a materially false statement or omission in connection with the plaintiff's purchase or sale of securities. See 15 U.S.C. § 78j(b); San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co., 75 F.3d 801, 808 (2d Cir. 1996). "An alleged misrepresentation or omission is material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." In re Nokia OYJ (Nokia Corp.) Sec. Litig., 423 F. Supp. 2d 364, 393 (S.D.N.Y. 2006). Courts regularly dismiss securities laws claims at the pleading stage upon a determination that no material misrepresentation has been properly alleged.[2]

"To survive dismissal, securities fraud complaints must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that the circumstances constituting fraud be 'state[d] with particularity.'" In re Magnum Hunter Res. Corp. Sec. Litig., 616 F. App'x. 422, 444 (2d Cir. 2015) (alteration in original). Under Rule 9(b), the complaint must identify the statements the plaintiff asserts were fraudulent as well as why, in plaintiff's view, they were fraudulent. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

The Private Securities Litigation Reform Act ("PSLRA") likewise requires that a complaint specify "each statement alleged to have been misleading, [and] the reason or reasons

---

[2] See, e.g., Tabak v. Canadian Solar Inc., 549 F. App'x 24, 28 (2d Cir. 2013); La Pietra v. RREEF Am., L.L.C., 738 F. Supp. 2d 432, 440–44 (S.D.N.Y. 2010); Branch v. Tower Air, Inc., 1995 WL 649935, at *5 (S.D.N.Y. Nov. 3, 1995).

why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).  Rule 9(b) and the PSLRA together require that the materiality of allegedly misleading statements be supported with particularized facts.  Id.  Plaintiffs here have made their allegations based on information and belief, further requiring that they "state with particularity all facts on which that belief is formed."  Id.[3]

The Complaint falls far short of these pleading standards, failing to allege either any false statement at all or particularized facts supporting the materiality of the alleged misstatements.

### A.    Allegations Regarding Eletrobras' Code of Ethics

An investor cannot plead an actionable misstatement under the securities laws simply by identifying a company code of conduct and alleging a breach of that code.  See In re Petrochina Co. Ltd. Sec. Litig., 2015 WL 46197977, at *12 (S.D.N.Y. Aug. 3, 2015); In re FBR Inc. Sec. Litig., 544 F. Supp. 2d 346, 359–60 (S.D.N.Y. 2008).  Nor does the mere existence of a code of conduct obligate a company to disclose any potential breach.  See FBR, 544 F. Supp. 2d at 360. Rather, to state a claim of securities fraud based on a violation of a code of conduct, a plaintiff must plead an actionable *misstatement* with respect to that code, such as regarding the code's existence or the company's compliance with the code.  See id. at 359.

Here, Plaintiffs fail to identify any actionable misstatement within Eletrobras' Code of Ethics itself.  Plaintiffs allege only that the Code of Ethics is a set of "'principles that guide the actions and commitments'" of Eletrobras employees.  CAC ¶ 71.  Such a "brief description of the compliance program's *aims* . . . fails to state a claim of securities fraud."  FBR, 544 F. Supp. 2d

---

[3] Allegations are deemed to be made on "information and belief" where they are outside the personal knowledge of the plaintiff.  "[T]he sources of information for fraud pleadings based on information and belief [must] be disclosed," in order to "allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein."  G-I Holdings, Inc. v. Baron & Budd, 2004 WL 1277870, at *2 (S.D.N.Y. June 10, 2004) (collecting cases).

at 359 (emphasis added).  Plaintiffs' allegation regarding Eletrobras' statement that its Ethics Committees were intended "'[t]o ensure compliance with the concepts described in the Code of Ethics,'" CAC ¶ 91, fails for the same reason.  See FBR, 544 F. Supp. 2d at 359.

Plaintiffs also fail to identify any actionable misstatement regarding the Company's compliance with the Code of Ethics.  Plaintiffs' claim in this regard rests on a small number of generalized statements by the Company—namely, statements that Eletrobras is "a transparent company," CAC ¶ 86, and a reference to its "increasingly professional management and transparency," id. ¶ 87.  Such statements are not actionable under the securities laws.

"It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery.'"  City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 183 (2d Cir. 2014); Boca Raton Firefighters & Police Pension Fund v. Bahash, 506 F. App'x 32, 37 (2d Cir. 2012).  Such statements are immaterial as a matter of law and "too general to cause a reasonable investor to rely on them."  ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 206 (2d Cir. 2009).  In rejecting allegations similar to Plaintiffs', one court in this district recently characterized a pledge "to increase transparency" as "*paradigmatic* puffery."  Strougo v. Barclays PLC, 105 F. Supp. 3d 330, 345 n.94 (S.D.N.Y. 2015) (emphasis added).[4]

---

[4] This case differs from Petrobras, where the court found that the challenged statements were "made repeatedly in an effort to reassure the investing public about the Company's integrity."  In re Petrobras Sec. Litig., 2015 WL 4557364, at *10 (S.D.N.Y. July 30, 2015) ("Petrobras").  Here, Plaintiffs point to only two isolated and generalized statements made several years before the earliest corrective disclosure alleged by Plaintiffs, see CAC ¶ 241, when Eletrobras had no need to "reassure" the investing public.  By contrast, Petrobras allegedly made statements specifically in response to public revelations of corruption.  See Consol. Am. Compl. ¶ 264, In re

Lastly, Plaintiffs point to several public statements by Eletrobras about recognition it received for its corporate governance—for example, that Eletrobras was highly rated on Dow Jones's Sustainability Emerging Markets Index, CAC ¶ 90, and that Eletrobras had been given an award for "corporate sustainability" which recognized the Company's commitment to ethics and transparency, id. ¶¶ 89, 92.  None of these statements is alleged to have been false. Plaintiffs' allegations regarding the Code of Conduct should therefore be dismissed.

**B.**     **Allegations Regarding Eletrobras' Financial Statements**

Plaintiffs have failed to adequately allege that Eletrobras' financial statements contained any material misstatement.  Not only do Rule 9(b) and the PSLRA require a plaintiff to plead facts demonstrating *why* a statement is misleading, see Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401, 423–24 (S.D.N.Y. 2014), but where a plaintiff claims that the amounts of improper transactions were included in a company's financials, it must plead some basis for the amounts and tie them to the transactions at issue, see Tabak v. Canadian Solar Inc., 549 F. App'x 24, 28 (2d Cir. 2013) (dismissing claims because "[a]lthough the [p]laintiffs have identified amounts that they contend were improperly included in revenues," plaintiffs did not state with particularity any facts to support their allegation that "sham transactions" underlay these amounts).  Allegations that fail to include the requisite particularity but instead are based on guesswork may be disregarded as speculation.[5]

---

Petrobras Sec. Litig., No. 14-cv-9662 (S.D.N.Y. Mar. 31, 2015), ECF No. 110 ("Petrobras Compl.") (Petrobras' CEO responding to bribery accusations by stating that company is committed to "ethics and transparency").

[5] Feasby v. Industri-Matematik Int'l Corp., 2000 WL 977673, at *7 (S.D.N.Y. July 17, 2000) (where "allegations of fraud and scienter are unsupported by any sort of factual background . . . this court must disregard them as speculation"); Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 411 n.10 (S.D.N.Y. 2007) (allegation of $50 million asset overstatement inadequate where complaint did not "state the basis for its valuation"); Branch, 1995

Plaintiffs make several attempts to allege a misstatement in Eletrobras's financial statements, but they fail to plead the required particularized facts supporting the existence and materiality of any misstatement.

### 1. Plaintiffs Fail to Allege Any Particularized Facts Linking the Alleged Bribery to an Impact on the Company's Financial Statements

Despite citing many press reports and publicly available testimony, Plaintiffs fail to allege any facts supporting their assertion of a material misstatement in the Company's financial statements. This failure distinguishes the instant case from <u>Petrobras</u>, where the allegations were supported by particularized factual allegations, linked to identified sources, which drew a direct connection between the alleged bribery and a resulting effect on the publicly reported costs of projects.[6]  No such allegations exist here. Nor do Plaintiffs identify any testimony suggesting that the bribery they allege resulted in any misstatements. The two sources they cite for that proposition fail to support their allegation.[7]

---

WL 649935, at \*5 (dismissing securities laws claims under Rule 9(b) because complaint contained unsupported data and statistics).

[6] Those allegations included that (1) based on the testimony of a former Petrobras executive, cartel members were apprised in advance of the company's estimated costs for a project and understood that they could bid at that cost plus a 15–20% profit margin; (2) cartel members built in a "three percent political adjustment" above that margin; (3) an identified manager at the company had reported overpayments to her supervisors; (4) the company had acknowledged that bribe payments were improperly accounted for as part of the cost of its assets; and (5) the company had provided estimates for necessary asset write-downs on account of the fact that bribes were improperly included in costs. <u>See</u> <u>Petrobras</u> at \*2–9. Each of these allegations was connected to an identified source. <u>See</u> Petrobras Compl. ¶¶ 50–51, 62, 92, 331, 338–39.

[7] Plaintiffs allege that Paulo Roberto Costa (a Petrobras director) and Alberto Youssef (a money launderer who allegedly funneled bribes between Petrobras and construction companies) testified to "overpricing of numerous projects" at Eletrobras, <u>see</u> CAC ¶ 7, but this allegation is not supported by the witness testimony filed with the

### 2.     Plaintiffs Fail to Allege Any Particularized Basis for the Alleged Misstatements in the Company's PP&E or Earnings

Plaintiffs' attempt to allege an actionable misstatement with respect to the reported value of the Company's property, plant and equipment ("PP&E") and earnings fails for lack of particularity. Although Plaintiffs *assume* a misstatement in those figures—and purport to quantify the amount of such misstatement—they have pled no facts substantiating the existence, much less the amount and materiality, of the misstatements they purport to identify. See CAC ¶¶ 129, 134, 140, 143, 148, 152. Rather, an examination of Plaintiffs' claims suggests that their specificity is spurious, reflecting an effort to reverse-engineer alleged overstatements from a quantitative level (5%) that Plaintiffs hope is sufficient to survive dismissal. As the chart below (in millions of Brazilian reals) illustrates with respect to the years 2010–2014, Plaintiffs arrive at their alleged figures by assuming a 5% overcharge and then rounding to the nearest million:[8]

---

court in Petrobras, see Windels Decl. Ex. A, nor by the sworn stipulations both men executed in connection with their leniency agreements, see Windels Decl. Exs. B–I (Costa) and J–K (Youssef). Youssef's testimony contained no allegation of overpricing, and while Costa stated briefly in his leniency agreements that contracts at Eletrobras involved cartel formation and bribes, see Windels Decl. Exs. B–I, this statement does *not* mean that contracts were either overpriced or resulted in the improper inclusion of bribes in Eletrobras' financial statements. (This Court may consider the testimony of Costa and Youssef, as it is incorporated by reference in the Complaint, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), and because the Complaint "relies heavily upon its terms and effect," id. at 153.) Moreover, according to press reports, Costa has recanted his prior statement that there was overpricing in contracts at Petrobras. Windels Decl. Ex. L.

[8] Plaintiffs appear to have used a different approach for 2009 (alleging an understatement of R$63 million, see CAC ¶ 129), but they likewise fail to allege any basis for that amount.

| Year | Alleged Profit (Loss) | 5% of Alleged Profit (Loss) | Alleged Misstatement |
|------|------------------------|------------------------------|----------------------|
| 2010 | 2,553 | 127.65 | 128 |
| 2011 | 3,762 | 188.1 | 188 |
| 2012 | (6,926) | (346.3) | (346) |
| 2013 | (6,291) | (314.55) | (315) |
| 2014 | (3,031) | (151.55) | (148)[9] |

Plaintiffs identify no basis whatsoever for the 5% overcharge rate that they have applied. As these figures are "unsupported by any sort of factual background"—and appear based on a formula that Plaintiffs have contrived but not explained—they should be "disregard[ed] . . . as speculation." Feasby v. Industri-Matematik Int'l Corp., 2000 WL 977673, at *7 (S.D.N.Y. July 17, 2000); see Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 411 n.10 (S.D.N.Y. 2007).

### 3.     Plaintiffs Fail to Allege Any Material Financial Misstatement as to Four of the Five Projects at Issue

Plaintiffs next attempt to allege a material misstatement by focusing on specific Eletrobras projects. Plaintiffs focus their efforts on a single project—Angra 3—and make no real effort to substantiate their allegations regarding the others. Their claims are deficient and should be dismissed with respect to each project. See City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc., 814 F. Supp. 2d 395, 410, 413–16 (S.D.N.Y. 2011) (dismissing claims with respect to specific projects discussed in complaint).

- *Santo Antonio.* Plaintiffs allege only that the Santo Antonio project is over-budget and has lost money, CAC ¶¶ 168–70. Such allegations do not state or support a claim of fraudulent misstatement with respect to the Company's financial reporting of this project. See In re Barrick Gold Sec. Litig., 2015 WL 1514597, at *7–8 (S.D.N.Y. Apr. 1, 2015) (project cost estimates not actionable absent allegations that they were known to be false when made). Plaintiffs allege no facts at all in support of the assertion that Madeira Energia, the SPE

---

[9] The alleged misstatement of R$148 million reflects application of the 5% assumption to the 2014 net loss of R$2,963 million reported by the company. See Eletrobras Form 6-K (May 29, 2015), p. 55, Windels Decl. Ex. M. The Complaint, however, includes a different 2014 net loss figure of R$3,031 million, see CAC ¶ 151.

constructing Santo Antonio, was capitalizing improper overcharges with respect to the project. CAC ¶ 170. Although Plaintiffs assert that Eletrobras "failed to *timely* recognize losses" from Madeira Energia, CAC at 54 (emphasis added), they do not explain why any recognition of losses was tardy or what the supposedly correct timetable would have been. "[M]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." Acito v. IMCERA Grp., Inc., 47 F.3d 47, 53 (2d Cir. 1995).

- *Belo Monte*. Plaintiffs do not advance any project-specific allegations supporting the existence of a misstatement regarding the Belo Monte dam project. Instead, the Complaint acknowledges that its quantification of the alleged overstatement at Norte Energia, the SPE constructing Belo Monte, is based only on the unsupported assumptions that Plaintiffs have made regarding overstatements at Eletrobras overall. See CAC ¶ 175 (alleging overstatement at Norte Energia "*[i]f* on an overall basis, the assets were overstated by approximately 3–5% due to kickbacks, overcharges and bribes*" (emphasis added). As detailed above, those "overall" assumptions are pure speculation, without the required basis in particularized facts, and should be rejected. See Caiafa, 525 F. Supp. 2d at 411 n.10.

- *Jirau*. Plaintiffs do not allege any financial misstatement at all regarding Jirau. Instead, the only alleged misstatement with respect to Energía Sustentavel do Brasil S.A. ("ESBR")—the SPE responsible for the Jirau plant, see CAC ¶¶ 177–78—is the alleged failure to identify Camargo Correa as both a partial owner of ESBR and a contractor. Plaintiffs allege no facts supporting the materiality of this alleged omission.

- *Teles Pires*. Plaintiffs do not allege any financial misstatement at all regarding Teles Pires and omit it from the section of the Complaint alleging misstatements in the Company's financials.

### 4.   Plaintiffs Fail to Allege a Material Misstatement as to Angra 3

Taken individually, none of Plaintiffs' allegations regarding improperly capitalized costs from the Angra 3 project has any plausibly alleged factual basis. Taken together, their allegations contradict one another and for that reason should be disregarded. In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself.").

(i)     **Allegation of R$5,769.3 Million
in Improperly Capitalized Costs**

Plaintiffs' allegation that Eletrobras has written off "R$5,769.3 million of *improperly capitalized costs*" relating to Angra 3 during the period December 2010 through September 2015, CAC ¶ 158 (emphasis added), is unsupported by any particularized facts and contradicted by other allegations in the Complaint.  First, simply because reported costs are written down does not indicate that they were "improperly capitalized" in the first place.  See Caiafa, 525 F. Supp. 2d at 410–11 (dismissing claims regarding asset overstatement where plaintiffs failed to plead how large write-down established fraud).  Plaintiffs allege no facts drawing a connection between the writedowns and any alleged bribery, unlike in Petrobras where a senior executive conceded that bribe payments had been improperly capitalized as part of the company's costs. Petrobras at *5.

Unable to identify writedowns specifically attributable to bribery, Plaintiffs appear to have added up every writedown on Angra 3 over a five-year period and made the assumption that the costs of Angra 3 were falsely overstated from inception by that amount.  This assertion is sheer speculation and should be disregarded.  See Feasby, 2000 WL977673, at *7; Caiafa, 525 F. Supp. 2d at 411 n.10.  Moreover, the notion that a writedown of R$5.8 *billion* could be entirely attributable to bribery is inconsistent with Plaintiffs' claim elsewhere that R$4.5 *million* in bribes was paid in connection with Angra 3.  Compare CAC ¶ 13 with id. ¶ 158.  Plaintiffs make no effort to reconcile these figures or to support the allegation that the total amount of the writedowns reflects "improperly capitalized costs."

Finally, Plaintiffs are incorrect in claiming that a September 2015 writedown was accompanied by "very little disclosure" in Eletrobras's filing—a "mere[]" two sentences, in Plaintiffs' telling, showing Eletrobras to be "less than transparent," id. ¶ 158.  Plaintiffs fail to

13

mention a footnote in the filing cross-referencing detailed information regarding the writedown in Eletrobras' financial statements filed with the Brazilian securities regulator.  Eletrobras Form 6-K (Nov. 17, 2015), p. 5 n.1, Windels Decl. Ex. N.  The regulatory filing includes a lengthy discussion of the reasons for the writedown, attributing it to a number of factors including inflation, foreign exchange fluctuations, and an increase in the project's evaluated riskiness based on calculations incorporating data from U.S. nuclear plants.  See ITR – Informações Trimestrais (Sept. 30, 2015), p. 122, Windels Decl. Ex. O.[10]

### (ii)     Plaintiffs' "Assumed Overcharge" of R$180 Million in Improperly Capitalized Overcharges as of December 31, 2014

Plaintiffs next advance a different (and inconsistent) allegation that "there are R$180 million of improper capitalized overcharges within the Angra 3 contracts at December 31, 2014," CAC ¶ 160.  Plaintiffs allege no particularized facts in support of that allegation, but instead acknowledge that they have simply applied an "*assumed* overcharge" of 3%, id. ¶ 159 (emphasis added), to the total value of contracts awarded as of the end of 2014 (R$6 billion) to reach their R$180 million figure.  As Plaintiffs have pled no basis for their assumption that 3% of Angra 3 contracts consisted of improper overcharges, their allegations must be dismissed.  See Feasby, 2000 WL 977673, at *7; Caiafa, 525 F. Supp. 2d at 411 n.10.

### (iii)     Allegation of R$2 Billion Overstatement of Earnings

Plaintiffs' final allegation regarding Angra 3, again different from (and inconsistent with) their other allegations, is that Eletrobras "should have . . . taken" a R$2 billion charge for the project, spread out over four years in installments specified by Plaintiffs.  See CAC ¶ 161.

---

[10] The Court may take judicial notice of regulatory filings, particularly where they are cross-referenced in disclosures pointed to by Plaintiffs.  See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406 (2d Cir. 2008); Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 124 n.12 (2d Cir. 2010).

Plaintiffs allege no facts to support their figure, and its inconsistency with Plaintiffs' other allegations warrants disregarding it.  See Livent, 151 F. Supp. 2d at 405–06.

First, Plaintiffs elsewhere allege a total of R$1.04 billion in misstated earnings due to improper capitalization of overcharges at Eletrobras between 2009 and 2014.  See CAC ¶¶ 128–52.  Plaintiffs offer no explanation for how those allegations (which themselves lack any support) can be reconciled with their claim that Angra 3 *alone* accounts for R$2 billion in overstated earnings over a *shorter* time period, see id. ¶ 161.

Second, Plaintiffs' allegation that a R$2 billion writedown *should have been taken* on Angra 3 cannot reconciled with their acknowledgment, elsewhere in the Complaint, that R$5.8 billion *was in fact written down* on the project.  See id. ¶ 158.  If Plaintiffs mean to allege that the Company wrote down more than it should have on Angra 3, they do not show why such an alleged overstatement of losses is material.  If Plaintiffs instead mean that the Company should have written down an *additional* R$2 billion, they are in effect urging a total writedown on Angra 3 of some R$7.7 billion, a figure seven times larger than Plaintiffs' estimate of improper capitalization at Eletrobras *as a whole*, see id. ¶¶ 128–52.

Plaintiffs' allegations regarding overcharges at Angra 3 are "conflicting pleadings that make no sense . . . [and] that are contradicted . . . by statements in the complaint itself." Livent, 151 F. Supp. 2d at 405.  Accordingly, this Court "need not feel constrained to accept [them] as truth," id., and should disregard them outright.

### 5.  Plaintiffs Fail to Allege an Actionable Misstatement as to Related-Party Transactions

Plaintiffs' claim that Eletrobras misrepresented or failed to disclose certain transactions with co-joint venturers, see CAC ¶¶ 179–81, in violation of International Accounting Standard 24 ("IAS 24") should be dismissed.  First, the IAS standard referenced by Plaintiffs does not

15

contain—but instead, explicitly disclaims—the requirement that Plaintiffs attribute to it.  IAS 24

states that "two venturers who share joint control over a joint venture" are "deemed not to be

related."  IAS 24.11, Windels Decl. Ex. P.  This Court need not accept as true Plaintiffs'

allegations regarding IAS 24 as they are "contradicted . . . by documents upon which [Plaintiffs']

pleadings rely"—namely IAS 24 itself.  <u>Livent</u>, 151 F. Supp. 2d at 405–06 (collecting cases).

Second, "'[a]llegations of GAAP violations or accounting irregularities, standing alone,

are insufficient to state a securities fraud claim . . . . Only where such allegations are coupled

with evidence of corresponding fraudulent intent might they be sufficient.'"  <u>ECA</u>, 553 F.3d at

200 (quoting <u>Novak v. Kasaks</u>, 216 F.3d 300, 309 (2d Cir. 2000)).  Plaintiffs do not articulate

why these allegations, even if true, raise the required strong inference of scienter.  Nor do

Plaintiffs allege facts showing why the supposed misstatements were material in light of

Plaintiffs' admission that Eletrobras did not conceal, but instead freely "acknowledged," its

relationships with its joint venture partners, CAC ¶¶ 180–81.  <u>See</u> <u>In re China Valves Tech. Sec.</u>

<u>Litig.</u>, 2012 WL 4039852, at *6–7 (S.D.N.Y. Sept. 12, 2012) (dismissing claims for failure to

disclose related-party transactions on materiality grounds).

### C.  <u>Plaintiffs Fail to Allege an Actionable Omission</u>

Having alleged no actionable misstatement, Plaintiffs likewise fail to allege a material

omission by the Company's nondisclosure of the alleged bribery scheme.  "[T]he securities laws

do not impose a general duty to disclose corporate mismanagement or uncharged criminal

conduct."  <u>See</u> <u>In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.</u>, 859 F. Supp. 2d

572, 579 (S.D.N.Y. 2012).  Because Plaintiffs can point to no statement that was rendered

misleading by the alleged failure to disclose, Plaintiffs' omissions claim should be dismissed.

<u>See</u> <u>id.</u> at 579–80.

16

### III.   The Complaint Fails to Adequately Plead Fraudulent Scienter

To state a claim under Section 10(b), a plaintiff must "state with particularity facts giving rise to a strong inference" that the defendant acted with "scienter, a mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007). Under the PSLRA, an inference of scienter arising from the facts alleged must be "cogent and at least as compelling as any opposing inference one could draw." Id. at 324. Plaintiffs have not pled the requisite inference of scienter with respect to any of the alleged misstatements in the Complaint.

#### A.   Plaintiffs Have Not Identified Any Individual Whose Intent May Be Imputed to Eletrobras That Acted with the Requisite Scienter

Because a "corporate defendant's scienter is necessarily derived from its employees," In re Marsh & Mclennan, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006), Plaintiffs must raise "a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter," Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 195 (2d Cir. 2008). As the Second Circuit held in Dynex, to impute an employee's scienter to a corporate defendant, the employee must have been "responsible for the statements made"—a requirement Dynex states twice. See id. at 197. Plaintiffs identify no such individual here.

#### 1.   Scienter Has Not Been Adequately Alleged as to Defendants Lopes, Carvalho, and Araújo

Plaintiffs allege no facts at all indicating that three of the four individual defendants—Lopes (former CEO), Carvalho (current CEO), or Araújo (current CFO)—participated in or even had any knowledge of the alleged fraud. As to these individuals, Plaintiffs' allegations rely entirely on their senior positions at the Company and on Carvalho's and Araújo's execution of required Sarbanes-Oxley Act ("SOX") disclosures. Neither is sufficient to allege scienter.

An individual's place in the corporate hierarchy is insufficient to raise a strong inference of scienter. See Marsh & Mclennan, 501 F. Supp. 2d at 483. As Plaintiffs have failed to specify how the individuals' positions exposed them to the alleged fraud, they have not adequately alleged scienter. See Novak, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co., 753 F. Supp. 2d 166, 186–87 (S.D.N.Y. 2010) ("Nor does the plaintiffs' allegation that the individual defendants served on an executive committee that monitored 'operational risks' give rise to a strong inference of scienter in the absence of any particularized allegation of contrary information possessed by the members of the committee.").

Nor can Plaintiffs infer scienter by alleging that Carvalho and Araújo signed Eletrobras' annual reports and SOX certifications, see CAC ¶¶ 25–26. A "plaintiff cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V., 89 F. Supp. 3d 602, 615 (S.D.N.Y. 2015). Contrary to Plaintiffs' allegations, see CAC ¶¶ 94–119, no such awareness is shown by the Company's disclosures of material weaknesses in its internal controls. In fact, where a company discloses material weaknesses while certifying its financials under SOX, these allegations do not support scienter. See Magnum Hunter, 616 F. App'x at 445; In re Magnum Hunter Res. Corp. Sec. Litig., 26 F. Supp. 3d 278, 295–98 (S.D.N.Y. 2014) ("While this pattern supports an inference of potentially poor accounting management, it does not support fraud.").[11]

---

[11] In fact, the disclosure of material weaknesses undercuts any inference of scienter, by indicating that Eletrobras sought to inform the market about weaknesses in its controls rather than conceal them. See Matrix

For these reasons, Plaintiffs' claims against defendants Lopes, Carvalho, and Araújo individually should be dismissed, and Plaintiffs' allegations regarding them cannot be used as a basis to impute fraudulent intent to Eletrobras.

### 2.   Scienter Has Not Been Adequately Alleged as to Defendant Cardeal

The Complaint identifies only a single Eletrobras employee, Valter Cardeal, as allegedly involved in the bribery scheme.  But the allegations regarding Cardeal do not give rise to an inference of scienter as to Eletrobras for two independent reasons.

### (i)   Cardeal Was Not Responsible for the Alleged Misstatements

The Second Circuit has held that an individual's intent may not be imputed to the corporation unless he is "responsible for the statements made." Dynex, 531 F.3d at 197 (rejecting inference of corporate scienter where low-level employees allegedly knew of malfeasance, because plaintiff did not allege scienter on the part of "someone . . . *who was responsible for the statements made*") (emphasis added).  After Dynex, courts in this District have declined to impute to a corporation the knowledge of individuals who were not responsible for corporate statements.[12]

---

Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 187 (4th Cir. 2009) ("[D]isclosures that timely raised questions about the reliability of financial information . . . lend weight to an inference that contemporaneous financial statements were made in good faith."); Yates v. Mun. Mortg. & Equity, LLC, 744 F.3d 874, 892 (4th Cir. 2014) ("The fact that [defendant] continued to update investors about newly discovered weaknesses tends to negate an inference that the defendants acted with an intent to defraud.").

[12] See Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank, 2013 WL 4856199, at *5 (S.D.N.Y. Sept. 10, 2013) ("[D]efendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer *making the statement* has the requisite level of scienter.") (emphasis added); In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 544 (S.D.N.Y. 2011) (no corporate scienter where plaintiffs

In 2011, the Supreme Court narrowed the scope of those responsible for a statement under Section 10(b), holding that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302 (2011). The impact of Janus is to circumscribe further the pool of individuals who are "responsible for the statements made" by a corporation and whose scienter may be attributed to the corporation under Dynex. As one commentator has observed, "after Janus, the sphere of individuals who can be considered to have 'made' the statement has shrunk . . . . Therefore, if the employee who had knowledge of the falsity of the statements being issued is not the same person as the employee with 'ultimate authority' over the statements, the scienter of the individual cannot be imputed to the corporation." Browning Jeffries, The Implications of Janus on Issuer Liability in Jurisdictions Rejecting Collective Scienter, 43 Seton Hall L. Rev. 491, 527 (2013); see also Randall W. Bodner et al., Corporate Scienter After Janus, 44 Sec. Reg. & L. Report 1639, at *9 (2012) ("Just as only those with 'ultimate authority' over a misstatement can be held primarily liable post-Janus, only the mental state of those officers and/or employees with 'ultimate authority' over a misstatement can impute to a corporation.").[13]

---

introduced no evidence of employee's role at company and whether company "endorsed or authorized" employee's statement); In re PXRE Grp., Ltd., Sec. Litig., 600 F. Supp. 2d 510, 537–40 (S.D.N.Y. 2009), aff'd sub nom. Condra v. PXRE Grp., Ltd., 357 Fed. App'x 393 (2d Cir. 2009) (dismissing claim for lack of corporate scienter, because knowledge of chief actuary could not be imputed to corporation).

[13] Cases in this District disclaiming a requirement that the person whose scienter is imputed to the corporation be the "maker" of the statement, see In re Moody's Corp. Sec. Litig., 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009); Marsh & Mclennan, 501 F. Supp. at 481 (S.D.N.Y. 2006), largely precede Janus and are in tension with Dynex, which explicitly declined to impute scienter from employees uninvolved with the corporation's

Here, the Complaint contains no particularized allegations that Cardeal was responsible for Eletrobras' public statements and filings, as required by Dynex, much less that he had the "ultimate authority" required under Janus.  To the contrary, the allegations in the Complaint indicate that Cardeal's authority was essentially operational, rather than financial.  See CAC ¶ 27.  Finally, the Complaint's boilerplate allegation that "[g]iven his senior position within the Company, he possessed the power and authority to control the contents" of public statements, id., is far too conclusory to support the inference that Plaintiffs urge.  See Marsh & Mclennan, 501 F. Supp. 2d at 483; Novak, 216 F.3d at 309.

### (ii)   Cardeal Is Alleged to Have Acted Adversely to Eletrobras' Interests

Cardeal's scienter cannot be imputed to Eletrobras for the independent reason that he was allegedly engaged in a scheme to defraud Eletrobras for the benefit of others outside Eletrobras. CAC ¶¶ 11, 45.  Under the "adverse interest exception," the scienter of an employee who acts adversely to his employer will not be imputed to the company, because "when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person . . . he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose."  In re CBI Holding Co., Inc., 529 F.3d 432, 448 (2d Cir. 2008).  In determining when the exception is triggered, "[t]he crucial distinction is between conduct that defrauds the corporation and conduct that defrauds others for the corporation's benefit."  Kirschner v. KPMG

---

financials.  See Bodner, supra, at *4 n.13 (noting that the decision in Moody's does not acknowledge Dynex and stating that it is "an outlier that does not comport with the Second Circuit's overall view").  Courts in this District have yet to come to a post-Janus consensus on the imputation of corporate scienter.  See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 2013 WL 1155420 at *4 & n.33 (S.D.N.Y. Mar. 20, 2013) (acknowledging disagreement and collecting cases); but see Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341 (S.D.N.Y. 2012) (denying motion for reconsideration brought in light of Janus).

LLP, 15 N.Y.3d 446, 467–68 (2010).  While the exception is narrow in application, it is regularly

invoked by courts.  See Allied Irish Banks, P.L.C. v. Citibank, N.A., 2015 WL 4104703, at *9

(S.D.N.Y. June 30, 2015); In re Refco Sec. Litig., 779 F. Supp. 2d 372, 376 (S.D.N.Y. 2011),

aff'd sub nom. Krys v. Butt, 486 Fed. App'x 153 (2d Cir. 2012); In re JPMorgan Chase & Co.

Sec. Litig., 2007 WL 4531794, at *9 (N.D. Ill. Dec. 18, 2007).

Cardeal's alleged conduct falls within the scope of the exception.  Plaintiffs allege that he

and others rigged bids to secure bribes for themselves and for Brazilian politicians.  Under the

"crucial distinction" set forth in Kirschner, Cardeal allegedly acted to "defraud[] the

corporation," not to "defraud[] others for the corporation's benefit."  Kirschner, 15 N.Y.3d at

467–68.

The allegation that the concealment of the alleged bribery scheme permitted the

Company to continue functioning, CAC ¶¶ 233–34, does not suffice to preclude application of

the adverse interest exception.  Allied Irish, 2015 WL 4104703, at *10.  In Allied Irish, the court

rejected precisely that contention, where the defendant argued that the exception should not

apply because concealment of losses by the plaintiff bank's trader enabled the bank to "attract

investors and customers and raise funds for corporate purposes."  Id.  As the court observed,

"[a]lthough in some sense each of [the trader's] acts of fraud delayed [the bank's] discovery of

[the] losses and thereby delayed the financial reckoning that was inevitably to follow, this is not

the classic case of a corporate officer falsely portraying financial health to third party investors

or shareholders."  Id.  The defendant's argument, if accepted, would effectively eliminate the

exception, because "[a] company victimized by fraud is always likely to suffer long-term harm

once the fraud becomes known."  Id.  In contrast to Petrobras, the Complaint does not allege that

Eletrobras benefited from its employees' looting of its coffers through a political patronage

system, see Petrobras at *12.  Nor, as discussed above, see supra Section II.B, have Plaintiffs

plausibly alleged that Eletrobras' PP&E was inflated by the alleged scheme, as was the case with

Petrobras, see id. at *5, *8.

    To the extent Plaintiffs argue that the bribery scheme enabled the Company to

successfully complete an October 2011 debt offering, any potential benefit to the Company is

negated by Plaintiffs' further allegation that this offering "enabled Defendants to raise funds

to . . . pay for construction projects *in furtherance of the bribery scheme*," see CAC ¶¶ 5, 230–

34 (emphasis added).  By Plaintiffs' own concession, it was not the Company itself that

benefited from new construction using these borrowed funds, but the "Brazilian politicians . . .

[and] top executives" who misappropriated the funds, id. ¶ 77.

### 3. Scienter Has Not Been Adequately Alleged Based on Non-Parties Pinheiro, Palocci, and Coelho

    Plaintiffs' allegations regarding the three other individuals alleged to have known of the

scheme—Othon Pinheiro, Adhemar Palocci, and Winter Coelho—fail to raise an inference of

scienter as to Eletrobras for the same reasons as Plaintiffs' allegations regarding Cardeal.  Those

individuals are not alleged to have had any role in, or awareness of, the alleged misstatements.

See CAC ¶¶ 12–13, 45, 72, 77, 219–23, 251, 258 (Pinheiro); id. ¶¶ 219, 219 n.14, 224 (Palocci);

id. ¶¶ 9–10, 54, 77, 219 (Coelho).  Also, like Cardeal, their alleged involvement in procuring

bribes for themselves and others would constitute conduct against the interest of the corporation,

precluding the imputation of their scienter to the Company.  See id. ¶ 77 (the scheme provided

"personal financial benefits to top executives, including Pinheiro and Coelho"); id. ¶ 9 (Coelho

accepted R$4 million in bribes); id. ¶ 45 (Pinheiro accepted R$4.5 million in bribes).

    Plaintiffs' allegations concerning these individuals suffer from the additional infirmity

that they worked for Eletrobras subsidiaries—not for the Company.  Id. ¶ 219.  The existence of

a parent-subsidiary relationship is insufficient to impute the intent of a subsidiary's employee to

the parent corporation.  Valentini v. Citigroup, Inc., 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011);

Defer LP v. Raymond James Fin., Inc., 654 F. Supp. 2d 204, 218 & n.102 (S.D.N.Y. 2009).

**B.      Plaintiffs Have Failed to Allege Scienter
          with Respect to the Individual Projects**

Plaintiffs do not even attempt to allege scienter with respect to any misstatements relating

to three of the five construction projects at issue—Jirau, Santo Antonio, and Teles Pires—and

their claims relating to these projects should be dismissed.  See, e.g., In re Molycorp, Inc. Sec.

Litig., 2015 WL 1097355, at *9–14 (S.D.N.Y. Mar. 12, 2015) (parsing individual claims for

scienter allegations); In re Lehman Bros. Sec. and ERISA Litig., 799 F. Supp. 2d 258, 276 n.105

(S.D.N.Y. 2011) (same).

Moreover, four of the five construction projects—all but Angra 3—are being constructed

by SPEs in which Eletrobras is only a minority owner.  See CAC ¶¶ 49, 56, 62, 65, 177;

Eletrobras Form 20-F (2013), p. 46–47, Windels Decl. Ex. Q.  It is well established that scienter

cannot transfer from a subsidiary to a parent unless the "parent . . . possessed some degree of

control over, or awareness about, the fraud."  Valentini, 837 F. Supp. 2d at 317.  In analogous

contexts, courts have held that allegations of minority ownership did not support an inference of

control sufficient to state a claim for securities fraud.  See In re Alstom SA, 406 F. Supp. 2d 433,

489 (S.D.N.Y. 2005) ("Minority stock ownership is not enough to establish control person

liability, since minority stock ownership does not give the owner the power to direct the primary

violator."); Ho v. Duoyuan Glob. Water, Inc., 887 F. Supp. 2d 547, 580–81 (S.D.N.Y. 2012)

(rejecting inference that defendants had "day-to-day involvement in [the primary violator]

simply because they were a minority shareholder" in context of § 15 claim).  Plaintiffs allege no

facts establishing how or why fraudulent scienter regarding any improprieties at these SPEs

should be imputed up the chain of corporate share ownership to Eletrobras, and their claims relating to these four projects should be dismissed.

## IV.    Plaintiffs' Section 20(a) Claim Should Be Dismissed

As Plaintiffs have failed to plead an underlying violation of Section 10(b), their claim for control person liability under Section 20(a), 15 U.S.C. § 78t, should be dismissed.  See Kleinman v. Elan Corp., PLC, 706 F.3d 145, 156 n.14 (2d Cir. 2013); La Pietra, 738 F. Supp. 2d at 445.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Complaint be dismissed with prejudice in its entirety.

Dated:   New York, New York
              January 27, 2016

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP


By:   _James H.R. Windels_

James H.R. Windels
Antonio J. Perez-Marques
Alexander F. Mindlin

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

james.windels@davispolk.com
antonio.perez@davispolk.com
alexander.mindlin@davispolk.com

*Attorneys for Defendants Centrais Elétricas*
*Brasileiras S.A., José Antonio Muniz Lopes,*
*José da Costa Carvalho Neto, and Armando*
*Casado de Araújo*