**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ELETROBRAS SECURITIES
LITIGATION

Case No.: 15-cv-5754-JGK

JURY TRIAL DEMANDED

**LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND**
**APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  HISTORY OF THE LITIGATION ............................................................................... 1

III. ARGUMENT ................................................................................................................. 2

   A.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
       ADEQUATE, AND SHOULD BE APPROVED BY THE COURT .................................. 2

     1.   The Law Favors and Encourages Settlements .................................................. 2

     2.   The Settlement is Procedurally Fair ................................................................. 3

     3.   The Second Circuit's Standards Governing Substantive Fairness
        Supports Final Approval of the Settlement .......................................................... 4

   B.   THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND
       IS FAIR AND REASONABLE, WARRANTING APPROVAL ..................................... 15

   C.   THE REQUIREMENTS OF CLASS CERTIFICATION HAVE
       BEEN MET AND THE CLASS SHOULD BE CERTIFIED ........................................... 17

   D.   THE NOTICE MET THE REQUIREMENTS OF RULE 23 AND
       DUE PROCESS .................................................................................................. 18

IV.  CONCLUSION ............................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................... 2

*Berman v. L.A. Gear,*
   1993 U.S. Dist. LEXIS 14900 (S.D.N.Y. Oct. 26, 1993) ..................................... 20

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ..................................................................................... 10

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................... 3, 5, 9, 14

*Dura Pharms., Inc. v. Broudo*
   544 U.S. 336 (2005) ................................................................................. 17

*Ediciones Quiroga, S.L. v. Fall River Music*,
   1998 U.S. Dist. LEXIS 19039 (S.D.N.Y. Dec. 4, 1998) ..................................... 5-6

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................. 20

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ................................................................................. 10

*In re Advanced Battery Techs. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................... 12, 15, 17

*In re Alloy, Inc., Sec. Litig.*,
   2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ..................................... 5, 9

*In re AOL Time Warner, Inc., Sec. & ERISA Litig.*,
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ............................... *passim*

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................... 7

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ..................................... 4

*In re Flag Telecom Holdings*,
   2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ................................. 2-3

*In re Fuqi Int'l, Inc. Sec. Litig.*,
   2016 U.S. Dist. LEXIS 20514 (S.D.N.Y. Feb. 19, 2016) ................................. 6, 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................... 3, 15

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 6, 17

*In re Holocaust Victim Assets Litig.*,
   413 F.2d 183 (2d Cir. 2001) .................................................................................. 17

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 2, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) ......................... 10, 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................... 9

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   2017 U.S. Dist. LEXIS 85004 (S.D.N.Y. May 22, 2017) ....................................... 4

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................... 2

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ................................ 15-16, 17, 18

*In re PaineWebber P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 7, 17

*In re Sadia S.A. Sec. Litig.*,
   2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) ................................ 5, 13

*In re Sturm*,
   2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) .................................. 12

*In re Top Tankers, Inc. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) .................................. 8, 15

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
   643 F. Supp. 2d 1094 (D. Minn. 2009) .................................................................. 13

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ................................................................................... 2

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005) .......................................................................... 14

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................. 19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ............................................................................. 3, 14

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................ 14

*Shapiro v. JPMorgan Chase & Co.*,
    2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) ............................................. *passim*

*Sicom S.P.A. v. TRS Inc.*,
    168 F. Supp. 3d 698 (S.D.N.Y. 2016) ...................................................................... 5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 2, 3, 19

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ................................................. 4

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ........................................................................... 17, 19

## <u>Other</u>

Fed. R. Civ. P. 23 .................................................................................. *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Dominique Lavoie ("Lavoie") and the City of Providence, Rhode Island ("Providence") (collectively, "Lead Plaintiffs") seek entry of an order: (i) granting final approval of the settlement, to which this Court granted preliminary approval to on August 17, 2018 (ECF No. 131); (ii) certifying the proposed Class for purposes of the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and (iii) approving the proposed plan for allocating the settlement proceeds to the Class ("Plan of Allocation").

## I.    INTRODUCTION

Lead Plaintiffs and Defendants Centrais Elétricas Brasileiras S.A. ("Eletrobras"), José da Costa Carvalho Neto and Armando Casado de Araújo (collectively, "Defendants") have reached a proposed $14,750,000.00 all-cash settlement ("Settlement") – an exceptional result for securities holders, representing at least 25% of the overall damages as determined by Lead Plaintiffs' damages consultants.  The Settlement results from nearly three years of protracted litigation, including formal discovery and extensive arm's-length negotiations with the assistance of a mediator, Mr. Jed Melnick, Esq. (JAMS). But for the vigorous efforts of Lead Counsel, the Class may have recovered nothing.  To date, not a single objection or request for exclusion has been received.

## II.   HISTORY OF THE LITIGATION

Lead Plaintiffs' motion for preliminary approval previously briefed the procedural history of this matter to the Court (*see* ECF No. 126, at 1-3).  Lead Plaintiffs respectfully refer the Court to that filing, as well as to the Joint Declaration of Donald R. Hall and Ramzi Abadou In Support of (1) Lead Plaintiffs' Motion for Approval of Settlement and Approval of Plan of Allocation; (2) Co-Lead Counsels' Motion for Award of Attorneys' Fees and Reimbursement of Expenses; and

(3) Lead Plaintiffs' Request for Reimbursement of Reasonable Costs and Expenses ("Joint Decl.")

attached hereto, which provides a detailed history of the litigation and the factors bearing on the

reasonableness of the Settlement, Plan of Allocation, and fee request.

## III.   ARGUMENT

### A.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

#### 1.  The Law Favors and Encourages Settlements

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

or compromised only with the court's approval." Fed. R. Civ. P. 23(e).[1]  Judicial approval of class

action settlements ensures that the rights of absent class members are protected.  *See Amchem*

*Prods. v. Windsor*, 521 U.S. 591, 621 (1997).  Under Rule 23, the Court must determine that a

class action settlement is fair, adequate, and reasonable, as well as not being a product of collusion,

before granting final approval.  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

While the decision to grant or deny approval lies within the discretion of the trial court, a

"strong judicial policy" favoring settlement exists, "particularly in the class action context."  *Wal-*

*Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re IMAX Sec.*

*Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012), quoting *In re Paine Webber Ltd. P'ships Litig.*, 147

F.3d 132, 138 (2d Cir. 1998) ("At the outset, we emphasize that that there is a 'strong judicial

policy in favor of settlements, particularly in the class action context.'").  Additionally, "[c]lass

action suits readily lend themselves to compromise because of the difficulties of proof, the

uncertainties of the outcome, and the typical length of the litigation."  *In re Luxottica Grp. S.p.A.*

*Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *In re Flag Telecom Holding*s, 2010 U.S. Dist.

---

[1]    Amendments to Rule 23, effective December 1, 2018, expressly add the claims, issues, or defenses belonging to "a class proposed to be certified for purposes of settlement" as being subject to Court approval.

LEXIS 119702, at *43 (S.D.N.Y. Nov. 5, 2010); *Shapiro v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 37872, at *28 (S.D.N.Y. Mar. 21, 2014).

Recognizing that a settlement represents the negotiating parties' mutual exercise of judgment, the Second Circuit has acknowledged that a district court does not simply "rubber stamp" a proposed settlement, while "stop[ping] short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *See Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972). Here, both the negotiating process leading to the Settlement and the Settlement's substantive terms support final approval. *See, e.g., Wal-Mart*, 396 F.3d at 116; *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).

### 2.   The Settlement is Procedurally Fair

A strong presumption of fairness attaches to a proposed settlement when, as here, it follows arm's length negotiations by experienced counsel who are most closely acquainted with the facts and law of the underlying litigation. *See, e.g., Wal-Mart*, 396 F.3d at 116; *Xuechen Yang v. Focus Media Holding, Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *10 (S.D.N.Y. Sep. 4, 2014) ("A class action settlement enjoys a 'presumption of correctness' where it is the product of arm's length negotiations conducted by experienced, capable counsel.") (citation omitted). Here, this presumption of fairness and adequacy applies because the Settlement is the result of extensive, arm's-length negotiations conducted by experienced counsel for all parties with the assistance of Mr. Jed D. Melnick of JAMS, an experienced mediator. *See* Joint Decl. at ¶¶ 8, 79-84; *Xuechen Yang v. Focus Media Holding, Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *14 (S.D.N.Y. Sept. 4, 2014) (finding that Mr. Melnick's participation "strongly supports a finding that negotiations were

conducted at arm's length and without collusion"); *see also, Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 73276, at *19 (E.D.N.Y. Apr. 17, 2015) ("The assistance of an experienced mediator, Jed Melnick, Esq. of JAMS, reinforces that the Settlement is non-collusive."); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 85004 (S.D.N.Y. May 22, 2017) (final approval granted, noting Mr. Melnick's efforts); *In re China Med. Corp. Sec. Litig.*, 2014 U.S. Dist. LEXIS 196118, at *12-14 (C.D. Cal. Jan. 7, 2014) (same).

Lead Counsels' conclusion that the Settlement is fair, reasonable, and in the best interests of the Class also supports its approval. *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."). Lead Counsel, who have substantial experience in securities class actions, have carefully analyzed the strengths and weaknesses of the Class' claims and the circumstances of the parties and have concluded that the proposed Settlement is in the best interests of the Class. *See* Joint Decl. at ¶ 97-120.  That judgment is entitled to "great weight." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *6 These considerations confirmed the reasonableness of the Settlement and leave little doubt that this Settlement is entitled to the presumption of procedural fairness under Second Circuit law.

### 3.  The Second Circuit's Standards Governing Substantive Fairness Supports Final Approval of the Settlement

Lead Plaintiffs' motion for preliminary approval briefly reviewed the nine factors that courts in the Second Circuit consider when determining whether or not to grant final approval to a class action settlement.  They are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  A more detailed examination of these factors follows here.

### i.  Complexity, Expense and Likely Duration of Litigation

The complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in securities fraud cases. *See e.g., In re Alloy, Inc., Sec. Litig.*, 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due in part to "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

Lead Plaintiffs respectfully suggest this case's costs and complexities are heightened because the Defendants, virtually all fact witnesses, and substantial documents all either reside in or originate from Brazil.  This element complicates the case in significant ways.  For example, this Court has previously noted that its lack of subpoena power over Brazilian persons can complicate fair discovery and trial work.  *In re Sadia S.A. Sec. Litig.*, 2011 U.S. Dist. LEXIS 149107, at *5 (S.D.N.Y. Dec. 28, 2011) ("A potential trial would be complicated by the court's lack of subpoena power over many [Brazilian] witnesses").

Also (as previously noted) foreign-language documents intended for use as evidence must be accompanied by certified translations. *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016); *id*. at n.9 (citations omitted); *Ediciones Quiroga, S.L. v. Fall River Music*, 1998 U.S. Dist. LEXIS 19039, at *5 n.3 (S.D.N.Y. Dec. 4, 1998) (in summary judgment, "[t]ranslations

of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence.").  Certified translators would undoubtedly require payment for their time and abilities, further increasing the costs of litigation – to say nothing of additional time and expense incurred in contentious motion practice, should the parties disagree about the accuracy of translations.

Worse still, here the certified translations would be inevitably shackled to complex accounting procedures that deviate from the generally accepted accounting principles of the United States.  *See In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 20514, at *17 (S.D.N.Y. Feb. 19, 2016) (holding first *Grinnell* factor is satisfied when claims "involved numerous complex factual issues relating to accounting, which were complicated by language issues and accounting procedures in the [People's Republic of China] that differed from those in this country…").  Such complicated accounting questions would require costly expert testimony, as would damages and loss causation issues.  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (future expenditures on, *inter alia*, developing expert testimony on complicated accounting issues weighs in favor of final approval); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (cost of future expert testimony "concerning such issues as proper accounting practices, […] damages and the extent to which the decline in the value of [securities] was attributable to general economic conditions affecting [the Company]" supports granting final approval).

During the preliminary approval hearing, this Court observed that "[t]he case would have been a difficult case. It was plain from the motion to dismiss that there are difficulties in the case. It would have been complex and time consuming."  *See* Joint Decl., at Ex. VI, Hearing Transcript at p. 4:17-19 ("Hr'g. Tr.").  Lead Plaintiffs agree and submit that the first *Grinnell* factor weighs

strongly in favor of granting final approval.

### ii.   The Reaction of the Class to the Settlement

The second factor considered is the reaction of the class to a proposed settlement. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012). Indeed, "the absence of objectors may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Following entry of the Preliminary Approval Order, on September 6, 2018, Epiq Global ("Epiq") mailed the Notice and Claim Form to Class Members and activated an online website at https://www.eletrobrassecuritieslitigation.com/, which provides additional information, including downloadable versions of relevant filings (ECF Nos. 41, 67, and 127), in addition to the Long Form Notice and claims materials.  *See* Joint Decl., **Exhibit I**, Declaration of Alexander Villanova Regarding Notice Dissemination and Publication ("Villanova Decl.") at ¶¶ 3-9; 17.   Next, on September 17, 2018, claims administrator Epiq published the Summary Notice in *Investor's Business Daily* and over *PR Newswire*.  *Id.* at ¶ 10.   Consistent with the drafts reviewed and approved by the Court, the long-form Notice and the Summary Notice included (i) a summary of the terms of the Settlement; (ii) Lead Counsel's reasons for recommending the Settlement; (iii) the date of the Settlement Hearing; (iv) information on how to obtain more information on the case and the Settlement; and (v) an explanation of Class Members' rights to object or exclude themselves. *Id.* at Ex. A.

Class Members may object to the settlement through November 14, 2018.   While that deadline has not yet passed, the Claims Administrator has received 171 submitted Claim Forms, zero opt-out requests, and zero objections.  *See* Villanova Decl. at ¶¶ 18-20.  At this juncture, Lead Counsel respectfully suggests that the Class Members' reaction to the Settlement is overwhelmingly positive and therefore supports final approval.

### iii.   The Stage of the Proceedings and Discovery Conducted

The third *Grinnell* factor examines the amount of information available about the claims and defenses and the positions of the parties to ensure that plaintiffs and their counsel were able to properly evaluate the merits of the case and assess the adequacy of the settlement. *See AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *36-37 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). "'There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *25 (S.D.N.Y. July 31, 2008), *quoting* Alba Conte, Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.45, at 127, 128 (4th Ed. 2002).

As noted above, the Settling Parties conducted extensive discovery, including (i) Defendants' production of over 885,000 pages of material; (ii) Lead Plaintiffs' related review; (iii) depositions of both Lead Plaintiffs and two of Providence's investment managers; (iv) scheduling and preparation for additional depositions of the corporate and Individual Defendants; (v) expert discovery, including the production of opposing expert reports on market efficiency and the depositions of both sides' respective experts.  The advanced stage of the litigation weighs in favor of approving the settlement, as this District has noted:

> Extended litigation between or among adversaries might bolster confidence that the settlement negotiations were at arm's length. If, by contrast, the case is filed as a settlement class action or certified for settlement with little or no discovery, it may be more difficult to assess the strengths and weaknesses of the parties' claims or defenses, to determine the appropriate definition of the class, and to consider how class members will actually benefit from the proposed settlement.

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (quoting *Manual for Complex Litigation, Fourth* § 21.612 (2004)). Based on the above, Lead Plaintiffs have ample basis to weigh the potential merits and weaknesses of the Class' claims, and made well-informed decisions in their effective settlement discussions; the positive result for the Class speaks for itself.

Through both its initial investigation and formal discovery, Co-Lead Counsel became well-informed about the strengths and weaknesses of the case and engaged in meaningful and effective settlement discussions with Defendants. Having sufficient information to evaluate the strengths and weaknesses of the Settlement, Co-Lead Counsel were equipped to intelligently negotiate the terms of the Settlement before the Court. Therefore, this Court should find that this factor also supports final approval of the Settlement.

### iv.   The Risk of Establishing Liability

The Settlement adequately reflects the value of Lead Plaintiffs' case. Counsel have expended substantial amounts of time and money researching the allegations against Defendants and prosecuting this case. While Lead Plaintiffs are confident regarding the ultimate outcome, they acknowledge the risks inherent in litigation, particularly so in a securities class action. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (issues present in securities action presented significant hurdles to proving liability). Therefore, any prediction of success is far from certain.

The Court's analysis should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. The Court is not required to "decide the merits of the case or resolved unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), nor "foresee with absolute certainty the outcome of the case." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *37. "[R]ather, the

9

Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id*. While Co-Lead Counsel believe that Lead Plaintiffs would successfully certify the class and survive an anticipated motion for summary judgment, ultimate success is never assured. The substantial recovery provided by this Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See, e.g.*, *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation").

Because this action involves claims for relief under the Securities and Exchange Act of 1934 (the "Exchange Act"), Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). When briefing their motion to dismiss, Defendants vigorously attacked these elements of Lead Plaintiffs' allegations, giving a preview of arguments they would undoubtedly raise at trial. For example, Defendants argued that the Company's 2014 and 2015 Annual Reports' adjustments were ultimately immaterial to investors, both quantitatively and qualitatively. ECF No. 62 at 6-11. Relatedly, Defendants also hotly challenged scienter (*see* ECF No. 45 at 18-30; *see also* ECF No. 54 at 10-15), one of the more difficult elements of a securities fraud claim to prove. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 26, 2003) (noting difficulty of proving scienter). In sum, Lead Plaintiffs faced numerous hurdles to proving liability in this action. While Co-Lead Counsel is confident in its position refuting these arguments, however, the outcome of these issues is far from certain. Such risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is reasonable.

### v. The Risk of Establishing Damages

Even if Lead Plaintiffs were able to overcome the risks in proving liability, they would still

face the risks of proving damages. *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *39. Doing so in securities fraud class actions is invariably complex and requires expert testimony, which may or may not be accepted by a jury. *Id.*; *see also In re Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *11-12 ("…proof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury").

Among other things, Defendants claimed that Lead Plaintiffs' damages model could not establish damages, suggesting the model (i) was not appropriately customized for the instant case; (ii) did not account for inflation existing at the beginning of the Class Period; and (iii) failed to consider whether or not purported structural changes to the Company or a Brazilian economic downturn unrelated to Lead Plaintiffs' allegations were adversely impacting securities prices. *See* ECF No. 96 at 38-39. If Defendants persuaded the fact-finder of this, the case would be over, with no recovery for the Class. To prevail, Lead Plaintiffs would have to prove that Defendants' alleged false and misleading statements inflated the price of Eletrobras American Depositary Shares ("ADSs"), and the amount of the artificial inflation. With the assistance of their damages experts, Lead Plaintiffs calculated the damages attributable to Defendants' alleged wrongdoing – but this figure assumes that every element of the Class' damages theory is accepted as correct and recoverable. These risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is well within the range of reasonableness.

### vi.   The Risks of Maintaining the Class Action through Trial

As noted above, Lead Plaintiffs' motion for class certification was fully briefed and pending at the time that the Settlement was reached. While Lead Plaintiffs are confident in their arguments supporting class certification, success is by no means guaranteed. Further, even if the Court would have certified the Class, Defendants still had multiple avenues to continue challenging class certification. For example, Defendants might have immediately sought appeal

pursuant to Federal Rule of Civil Procedure 23(f), precipitating an additional round of briefing.  *In re Sturm*, 2012 U.S. Dist. LEXIS 116930, at *19 (D. Conn. Aug. 20, 2012).   Alternatively, Defendants may later move this Court to decertify the Class before trial, as Federal Rule of Civil Procedure 23(c) authorizes a court to review and decertify a class at any time.  *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014).   Just as the Second Circuit's ruling in *Petrobras* already impacted class certification briefing here,[2] future developments in case law are unpredictable, and may also risk class decertification. *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *39-40 ("…no one can deny that developments in class action law, including multiple decisions from the United States Supreme Court, have altered the landscape in which class status is determined.").

Settlement eliminates these risks, as well as the related expenses and delays inherent in the litigation process.  Accordingly, the risks of maintaining the class through trial weigh in favor of this Settlement.

### vii.   The Ability of Defendants to Withstand a Greater Judgment

The next factor considers Defendants' ability to withstand a greater judgment.  During the preliminary approval hearing, the Court noted that the ability to withstand a greater judgment does not guarantee greater rewards, stating: "Even though there's no indication that the defendants could not have withstood an even larger judgment against them, it would have taken a considerable period of time with no assurance of success."  *See* Hr'g. Tr. at p.4:19-23.[3]  Lead Plaintiffs agree, and  suggest  an  additional  perspective:  namely,  that  the  Court  should  consider  not  just  the

---

[2]    *See* ECF No. 107 at 1, n.1.

[3]    Even if Defendants could pay more, "this fact, standing alone, does not render the settlement inadequate." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009) (citing *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999)).

Defendants' solvency, but also whether or not other circumstances enhance the risk of collecting a judgment in the first place. *See generally*, *Palacio v. E\*TRADE Fin. Corp.*, 2012 U.S. Dist. LEXIS 88019, at \*12 (S.D.N.Y. June 22, 2012) (referring to the sixth *Grinnell* factor as a "risk of collection," further noting this risk is eliminated with a settlement). Those circumstances are present here, as enforcing a securities fraud judgement in an overseas court is sometimes a dubious proposition.

This Court has previously noted, "…it is not certain that courts in Brazil would enforce a U.S. securities fraud class action judgment." *In re Sadia*, 2011 U.S. Dist. LEXIS 149107, at \*5 (questionable enforcement in Brazil weighs in favor of final approval); *see also In re Fuqi Int'l,* 2016 U.S. Dist. LEXIS 20514, at \*21 (same, involving Chinese defendants). Here, the Company Defendant's own annual reports warn that a judgment rendered by a United States Court might not be enforceable in Brazil, including "judgments predicated upon the civil liability provisions of the securities laws of the United States[.]" *See* ECF No. 61-1 at 34; *also* ECF No. 61-2 at 32.[4] Ongoing political instability in Brazil only amplifies the risks pertaining to the predominantly state-owned electric company. The risk of collection is therefore high – but by settling the case now, Lead Plaintiffs will recover for the Class a large percentage of damages and eliminate the risk of being unable to enforce a judgment against one or more of the Defendants in a Brazilian court.

### viii.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

The next *Grinnell* factor concerns the range of reasonableness of the settlement fund in light of the best possible recovery. *Grinnell*, 495 F.2d at 462. In considering the adequacy of the settlement, the amount should be judged "not in comparison with the possible in the best of all

---

[4]    Pagination refers to the Annual Reports as originally printed, not the ECF-generated numbers at the top of each document.

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Stein*, 464 F.2d at 693. Additionally, the Court should consider that the Settlement provides for immediate payment to the Class, instead of forcing them to wait additional years for a speculative payment. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund in escrow earning interest "the benefit of the Settlement will….be realized far earlier than a hypothetical post-trial recovery"). Considering the present and time value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, this Settlement is well within the range of reasonableness. *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

Although Lead Plaintiffs and Defendants disagree as to the amount of maximum recoverable damages, the $14.75 million Settlement Fund is a substantial recovery regardless of which party's damages metric is used.  The Settlement represents approximately 25% of the recoverable damages as calculated by Lead Plaintiffs' damages experts.  For cases with comparable damages, the Settlement compares favorably to the median recoveries of 8.2% (for cases spanning 2008 – 2016) and 6% (for 2017) of recoverable damages.  *See* Cornerstone Research, Securities Class Action Settlement, 2017 Review and Analysis, at *8, located at http://securities.stanford.edu/research-reports/1996-2017/Settlements-Through-12-2017-

Review.pdf (last viewed October 4, 2018).  In plain dollars, the Settlement here nearly triples the reported median settlement figure for 2017, which was $5.0 million.  *Id.* at *1.

### ix.  The Range of Reasonableness of the Settlement to a Possible Recovery in Light of the Attendant Risks of Litigation

Finally, the Court must consider the range of reasonableness for the Settlement in light of all the attendant risks of litigation.  Here, Lead Plaintiffs faced numerous legal and procedural hurdles that, if not met, could result in zero recovery for Lead Plaintiffs and the Class. In light of these challenges, the Settlement Amount is not just reasonable but exceptional.  Lead Plaintiffs respectfully suggest that the $14,750,000 Settlement warrants approval, considering the risks of ongoing litigation and the potential that the Class might receive nothing.  *See Melito v. Am. Eagle Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 146343, at *35 (S.D.N.Y. Sep. 8, 2017) (finding $14,500,000 settlement falls well within the range of reasonableness).

### B.   THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE, WARRANTING APPROVAL

A plan for allocating settlement proceeds should be approved if it is fair, reasonable, and adequate.  *In re IMAX*, 283 F.R.D. at 192.  Damages in securities fraud actions are often incapable of mathematical precision – accordingly, the allocation formulae need only have a rational basis and great weight is given class counsel's evaluation of the plan against the merits of the claims. *In re Advanced Battery Techs.*, 298 F.R.D. at 180; *In re Giant Interactive Grp.,* 279 F.R.D. at 163; *see also In re Top Tankers,* 2008 U.S. Dist. LEXIS 58106, at *34, citing *In re Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *15; *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *41 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

Here, the Plan of Allocation has a rational basis, formulated by Lead Counsel with the assistance of their retained damages expert, Dr. Steven Feinstein.  *See In re Veeco Instruments*

*Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *15 (S.D.N.Y. Nov. 7, 2007) (accepting Dr. Feinstein's work on a plan of allocation); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 93423, at *33 (S.D.N.Y. Dec. 19, 2007) (same).  The Plan of Allocation was fully outlined in the Notice.

The Plan of Allocation provides for distribution of the Net Settlement Fund (i.e., the settlement consideration less taxes, approved costs, fees, and expenses) to Class Members who have a recognized loss on their transactions in Eletrobras ADSs and options purchased or otherwise acquired during the Class Period. *See* Joint Decl. at ¶¶ 121-125. The Plan of Allocation recognizes losses on Eletrobras common and preferred ADSs and related options based on the nexus between the purchase and sale dates of each security (where applicable), relative to the corrective disclosures beginning on or around October 27, 2014.  The Plan of Allocation provides a *pro rata* share of the Net Settlement Fund to each Authorized Claimant (as defined in ¶ 1.2 of the Stipulation, ECF No. 127), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants (*see* ECF No. 127-2 at ¶ 69).

The formula to apportion the Net Settlement Fund among Authorized Claimants is based on their purchase price of the Eletrobras ADSs or options and whether and when they sold those securities relative to the Company's alleged corrective disclosures. If Class Members sold their stock prior to the beginning corrective disclosures, the recognized loss for each security shall be zero. *See generally Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  Moreover, the Plan of Allocation also accounts for whether Class Members purchased or acquired Eletrobras Common or Preferred ADSs or options.  The Plan of Allocation (*see id.* at ¶ 47) provides a proportionately greater recovery to Eletrobras common and preferred ADS than to Eletrobras call and put options

16

on the common and preferred ADS, which is fair and reasonable. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*39; *Glob. Crossing*, 225 F.R.D. at 462. Indeed, interclass allocations may be appropriately based upon, among other things, the relative strengths and weakness of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.2d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *See PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believes that the Plan of Allocation is fair and reasonable, and respectfully submits that it should be approved by the Court.

### C.   THE REQUIREMENTS OF CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

Lead Plaintiffs respectfully suggest that the Court should grant final certification to the Class for Settlement Purposes only, as is the accepted practice in the Second Circuit. *In re Advanced Battery Techs.,* 298 F.R.D. at 180, citing *Weinberger v. Kendrick*, 698 F.2d 61, 72-73 (2d Cir. 1982) ("The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes."); *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at \*49-50 (same); *Marsh*, 2009 U.S. Dist. LEXIS 120953, at \*27 (same).

Here, the parties have stipulated to certifying a Settlement Class for settlement purposes consisting of:

> … all Persons who purchased or otherwise acquired Eletrobras common and/or preferred American Depositary Shares ("ADSs") (trading symbols EBR and EBR.B, respectively) either on a United States exchange or pursuant to other Covered Transactions between August 17, 2010 and June 24, 2015, inclusive. Excluded from the Settlement Class is anyone named as a Defendant in this action; members of the immediate family of any such Defendant; any entity in which any such Defendant or family member has or had a controlling interest; the former and current officers and directors of Eletrobras; or the legal affiliates, representatives, controlling persons, predecessors-in-interest, heirs, assigns, or any other successors-in-interest of any such excluded party. Also excluded from the

Settlement Class are those Persons who have timely and validly requested exclusion from the Settlement Class pursuant to the "Notice of Pendency and Proposed Settlement of Class Action" sent to potential Settlement Class Members.

*See* ECF No. 127 at ¶ 1.24; *see also id*. at ¶ 9.1.

Classes certified for settlement purposes, like all other classes, must meet the requirements of Rule 23(a) and at least one of three requirements set forth in Rule 23(b).  *Marsh*, 2009 U.S. Dist. LEXIS 120953, at *27-28, citing *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 163 F.R.D. 200, 205-10 (S.D.N.Y. 1995).  Lead Plaintiffs' Memorandum in Support of Their Unopposed Motion for Preliminary Approval of Settlement (*see* ECF No. 126 at 13 – 18), previously explained how the Settlement Class satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), as well as its satisfaction of Rule 23(b)(3)'s predomination and superior adjudication requirements (as did the briefing in support of Lead Plaintiffs' motion for class certification at ECF No. 82, *also* reply at ECF Nos. 106 [under seal], 107 [redacted].

The Court seemingly agreed, remarking during the preliminary approval hearing on July 17, 2018: "The settlement is sufficiently fair, reasonable, and adequate to be approved on a preliminary basis for notice to be sent out to the class, and for the class to indicate its approval, disapproval, opt-out, objections to the settlement."  *See* Hr'g. Tr. at p. 4:10-13.  Moreover, the Preliminary Approval Order conditionally certified the Class for settlement purposes because it approved the form and substance of the Notice and Summary Notice to the Class, which expressly provided for preliminary approval of the Settlement Class.  *See* ECF No. 131, *c/f with* ECF No. 130-2 at ¶¶ 1, 9; 27; ECF No. 130-3.

## D.     THE NOTICE MET THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice of a proposed class action settlement must be provided to the Class through "the best notice practicable under the circumstances, including individual notice to all members of the

class who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See also* Fed. R. Civ. P. 23(e)(1). While there are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Federal Rule 23(e) requirements, the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Weinberger*, 698 F.2d at 70, corrected on other grounds, 698 F. 2d 61, 65 (2d Cir. 1983), cert. denied, 464 U.S. 818 (1983).

The Notice's adequacy should be measured by a reasonableness standard. *See, e.g., Wal-Mart*, 396 F.3d at 113. To satisfy due process, the notice to Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Notice should also provide a "very general description[] of the proposed settlement." *Weinberger*, 698 F. 2d at 70. Due process is generally satisfied by sending a copy of the notice via first class mail to each class member whose address can be located with reasonable effort along with a publication notice. *See, e.g.*, *Mullane*, 339 U.S. 314; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-177 (1974). This is exactly what happened here.

Following entry of the Preliminary Approval Order, Epiq mailed the approved Notice to Class Members whose names appeared in the Company's transfer agent records and to brokers, banks, and other financial institutions that Epiq believed held Eletrobras ADSs in street name for Class Members. In total, Epiq mailed 57,108 copies of the Notice to potential Class Members via first class mail. *See* Villanova Decl. at ¶ 9. The Notice was concurrently published online *via* the class action website, available to curious investors *via* a typical internet search engine. *Id*. at ¶ 17. In addition, the Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on September 17, 2018. *Id*. at ¶ 10.

The Notice (*see* Villanova Decl., Ex. A) fairly recited the subject matter and proposed Settlement terms, and presented the Class Members' options to personally appear and/or object to any aspect of the relief requested or to request exclusion from the Class. Related deadlines were plainly disclosed, with sufficient time for Class Members to act. Class Members have through November 14, 2018 to object to any aspect of the Settlement or the Plan of Allocation, or to request exclusion from the Class; sixty-nine days from the initial Notice mailing and fifty-eight days from publication of the Summary Notice. The time frame amply satisfies due process. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (31 days between mailing and deadline held sufficient); *also Berman v. L.A. Gear*, 1993 U.S. Dist. LEXIS 14900, at *12-13 (S.D.N.Y. Oct. 26, 1993) (less than ten days, while short, still provided sufficient notice to satisfy due process). Accordingly, the Notice sent to Class Members satisfies the requirements of due process and Fed. R. Civ. P. 23(c) and (e).

## IV.    CONCLUSION

For the foregoing reasons, this $14,750,000.00 all-cash Settlement and proposed Plan of Allocation of the Settlement Proceeds are fair, reasonable, and adequate, and should therefore be approved.


Dated: October 31, 2018                    Respectfully Submitted,

                                           **KAHN SWICK & FOTI, LLP**

                                           By:  ____/s/ Ramzi Abadou_____
                                           Ramzi Abadou (admitted *pro hac vice*)
                                           912 Cole Street, # 251
                                           San Francisco, CA 94117
                                           Telephone: 504-455-1400
                                           Facsimile: 504-455-1498

                                           -and-

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
Alexander Burns (admitted *pro hac vice*)
Alayne Gobeille (admitted *pro hac vice*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504-455-1400
Facsimile: 504-455-1498


*/s/ Donald R. Hall*
**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Melinda Campbell
Jason A. Uris
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Co-Lead Counsel for the Class*

**CERTIFICATION OF COMPLIANCE:**

The undersigned certifies that, in accordance with the *Individual Practices of Judge John G. Koeltl*, dated March 2018, this memorandum is: (i) 6,340 words in length (exclusive of the cover page, certification of compliance, table of contents, and table of authorities); (ii) double spaced (including footnotes); and (iii) in a legible font, using reasonable margins.

*/s/ Ramzi Abadou*
Ramzi Abadou


**CERTIFICATE OF SERVICE**

I, Ramzi Abadou, hereby certify that, on Wednesday, October 31, 2018, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Ramzi Abadou*
Ramzi Abadou