**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                                                    |                                |
| -------------------------------------------------- | ------------------------------ |
| IN RE ELETROBRAS SECURITIES LITIGATION             | Case No.: 15-cv-5754-JGK       |
|                                                    | JURY TRIAL DEMANDED            |

**LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .............................................................................................. 1

II.  HISTORY OF THE LITIGATION .................................................................................... 4

III.  ARGUMENT ...................................................................................................................... 5

   A.  Legal Standards for Evaluating Attorneys' Fee Requests
      in Federal Securities Class Actions.................................................................................. 5

   B.  Co-Lead Counsel's Fee Request Is Reasonable Under A
      Percentage-of-Recovery Analysis.................................................................................... 7

   C.  A Lodestar Cross-Check Further Supports the Requested Fee Award .............................. 8

   D.  The *Goldberger* Factors Further Support the Requested Fee ......................................... 9

      1.  Time and Labor Expended By Counsel ................................................................ 9

      2.  The Magnitude and Complexity of the Litigation........................................... 11

      3.  The Risk of the Litigation Supports the Requested Fee ................................. 14

      4.  Quality of Representation................................................................................. 17

      5.  The Requested Fee in Relation to the Settlement............................................ 18

      6.  Public Policy Considerations Support the Requested Fee............................... 18

   E.  The Class' Reaction to the Fee Request ....................................................................... 20

   F.  Co-Lead Counsel's Request for Reimbursement of Expenses ......................................... 21

   G.  Request for Reimbursement to the Lead Plaintiffs for Their
      Out-Of-Pocket Time and Expenses Directly Related to Their
      Representation of the Settlement Class........................................................................... 22

IV.  CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abel v. Town Sports Int'l, LLC,*
  2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) .................................................... 5

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ................................................................................................. 19

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
  472 U.S. 299 (1985) ................................................................................................. 19

*Blum v. Stenson,*
  465 U.S. 886 (1984) .............................................................................................. 5, 6

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*
  954 F. Supp. 2d 276 (S.D.N.Y. 2013) ................................................................... 3

*Ediciones Quiroga, S.L. v. Fall River Music,*
  1998 U.S. Dist. LEXIS 19039 (S.D.N.Y. Dec. 4, 1998) ...................................... 14

*Goldberger v. Integrated Res.,*
  209 F.3d 43 (2d Cir. 2000) ............................................................................ 5, 6, 7, 18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
  2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ................................ 8, 12

*In re Acclaim Entertainment, Inc., Sec. Litig.,*
  2007 U.S. Dist. LEXIS 98851 (E.D.N.Y. Oct. 2, 2007) ......................... 7, 11, 19, 21

*In re "Agent Orange" Prod. Liab. Litig.,*
  1985 U.S. Dist. LEXIS 23652 (E.D.N.Y. Jan. 7 1985) ...................................... 12

*In re Am. Bank Note Holographics,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 15

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.,*
  2008 U.S. Dist. LEXIS 95437 (E.D. Pa. 2008) .................................................... 4

*In re Bear Stearns Cos.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 8

*In re Cendant Corp. Sec. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ................................................................................... 4

*In re Copley Pharm., Inc.,*
  1 F. Supp. 2d 1407 (D. Wyo. 1998) ...................................................................... 6

*In re Elan Sec. Litig.,*
  385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................................. 12

ii

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ..................................... 21

*In re Fuqi Int'l, Inc. Sec. Litig.*,
2016 U.S. Dist. LEXIS 20514 (S.D.N.Y. Feb. 19, 2016) ............................... *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 14-15, 18, 22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ..................................... 7

*In re Ikon Office Solutions v. Stuart*,
194 F.R.D. 166 (E.D. Pa. 2000) ......................................................................... 11

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................. 8

*In re LeBranche Sec. Litig.*,
Civ. No. 03-CV-8201, slip op. (S.D.N.Y. Jan. 22, 2009) ..................................... 7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ................................... 6

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 17, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 18

*In re Prudential Sec. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ..................................................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2006) .................................................................. 5, 6, 7, 21

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ................................................................... 5

*In re Sadia S.A. Sec. Litig.,*
2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) ............................... 3, 16

*In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................. 11

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 5, 6

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................... 19

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*,
   952 F. Supp. 2d 542 (S.D.N.Y. 2013) .................................................................. 14

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 7, 18

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ......................................................................... 20

*Sicom S.P.A. v. TRS Inc.*,
   168 F. Supp. 3d 698 (S.D.N.Y. 2016) ................................................................. 14

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 14

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   2004 U.S. LEXIS 8608 (S.D.N.Y. 2004) ............................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 19

## **Statutes**

15 U.S.C. § 78u-4 ................................................................................................. 4, 5

## **Other**

Stefan Boettrich & Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review," NERA (29 January 2018) (available at https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf, last accessed October 11, 2018) ........................................ 1, 18

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 245, 262 (2010) ........................................ 7-8

Kahn Swick & Foti, LLC ("KSF") and Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox") (collectively, "Co-Lead Counsel"), with the approval of the Court-appointed Lead Plaintiffs Dominique Lavoie ("Mr. Lavoie") and the City of Providence, Rhode Island ("Providence") (collectively, "Lead Plaintiffs"), respectfully submit this memorandum in support of their motion for an award of attorneys' fees and for reimbursement of litigation expenses. In consideration of Co-Lead Counsel's efforts, and the recovery obtained for the Class, and the significant risks discussed herein, Co-Lead Counsel respectfully move the Court for: (i) an award of attorneys' fees of 25% of the Settlement Fund; and (ii) a reimbursement of expenses reasonably and necessarily incurred in prosecuting and resolving the Action, totaling $570,507.99, plus interest. Relatedly, Co-Lead Counsel further request that Providence and Mr. Lavoie be awarded $8,179.12 and $13,416.00, respectively, to compensate them for their time and expenses incurred in their roles as Lead Plaintiffs and representatives of the Class.

## I.     PRELIMINARY STATEMENT

The $14,750,000 all-cash Settlement for the Class is a remarkable recovery, representing approximately 25% of the recoverable damages (approximately $57.6 million, as determined by Lead Plaintiffs' damages consultants).  With the median ratio of settlements to investor losses at only 2.6% in 2017 for securities class actions,[1] this Settlement represents a recovery of approximately 10 times greater than the average in similar cases.  But for Co-Lead Counsel's skill, diligence, and advocacy in prosecuting this Action on a wholly contingent basis, the Settlement would not have been possible.  This Settlement was only achieved after the extensive work outlined in §III.D.1, *infra*, and detailed in the accompanying Joint Declaration (see §II,

---

[1]     *See* Stefan Boettrich & Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review," NERA (29 January 2018) (available at https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf, last accessed October 11, 2018), at p. 38.

*infra*).   Indeed, not a single objection to Co-Lead Plaintiffs' fee request has been received to date.

When the Settlement was reached, Co-Lead Counsel understood the strengths and weaknesses of the case, the risks of continued litigation and the propriety of Settlement. Balanced against the litigation's considerable risks, the Settlement represents a significant recovery for the Class. Considerable obstacles faced Lead Plaintiffs in proving liability and damages, and in certifying the Class.  While Lead Plaintiffs largely survived Defendants' initial attempts to dismiss the litigation, Defendants further challenged whether a class of investors in Eletrobras American Depositary Shares ("ADSs") could be certified.

Opposing class certification, Defendants argued that Lead Plaintiffs were neither adequate nor typical, and that the expert analysis Lead Plaintiffs offered in support of market efficiency was insufficient and unreliable. Additionally, in a preview of arguments Defendants would likely have raised at summary judgment and trial, Defendants argued that Lead Plaintiffs' expert analysis could not establish damages because it: (i) did not identify or address the "particular complexities presented by this case"; (ii) did not account for inflation existing at the beginning of the Class Period; and (iii) failed to consider whether or not purported structural changes to the Company or a Brazilian economic downturn (both unrelated to Lead Plaintiffs' allegations) were adversely impacting securities prices.  *See* ECF No. 96 at 38-39.   Regardless of Co-Lead Counsel's confidence in their arguments supporting class certification, Defendants' success on any of their arguments opposing class certification – or anticipated arguments at the summary judgment stage or trial of the merits – would result in *zero* recovery for the Class.

Co-Lead Counsel are extremely experienced in the prosecution of federal securities class actions, and respectfully submit that the Settlement is a testament to the quality of their work and

legal representation. Given the recovery obtained, the amount and complexity of the work involved during the pendency of the Litigation, the skill and expertise required to prosecute and resolve the claims asserted, and the substantial risks that they undertook in this Action, Co-Lead Counsel respectfully submit that the 25% fee request is fair and reasonable, and is reasonably consistent with common fund cases involving similar recoveries and obstacles to same.[2]  *See, e.g. In re Sadia S.A. Sec. Litig.*, 2011 U.S. Dist. LEXIS 149107, at *10 (S.D.N.Y. Dec. 28, 2011) (awarding $8.1 million in attorneys' fees, representing 30% of the common fund, in case involving Brazilian company's allegedly false and misleading statements regarding currency hedging practices); *In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 20514 (S.D.N.Y. Feb. 19, 2016) (approving fee award of 33 1/3% of the $7.5 million common fund settlement, noting "[h]ere, the securities claims advanced by Plaintiffs involved numerous complex factual issues relating to accounting, which were complicated by language issues and accounting procedures in the [People's Republic of China] that differed from those in this country.")

The requested 25% fee also represents a negative 0.743 multiplier of the total lodestar value of the time that Co-Lead Counsel dedicated to this Action. Furthermore, Co-Lead Counsel submits that its request for reimbursement of $570,507.99 in litigation expenses is fair, reasonable, and warrants the Court's approval.

Over 57,100 Notice packets were mailed to potential Class Members, informing them that Co-Lead Counsel would apply for attorneys' fees of up to 28.5% of the Settlement Fund, as well as reimbursement of expenses of up to $850,000. *See Declaration of Alexander Villanova Regarding Notice Dissemination and Publication* ("Villanova Decl."), ¶ 9; *id.* at Ex. A. Both

---

[2]    This District has acknowledged an emerging trend towards an "increasingly used benchmark of 25%" (*see, e.g. City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013)).  Further, here, the 25% fee request is less than the 28.5% disclosed in Co-Lead Plaintiffs' notice materials.

provide a ceiling exceeding the fee award and actually-incurred expenses sought here (25% and $570,507.99, respectively).   There have no objections to Co-Lead Counsel's fee and reimbursement requests.  *Id*. at ¶20.   Although additional time remains to object before the November 14, 2018 deadline, the absence of objections supports Co-Lead Counsel's fee and expenses request.

Co-Lead Counsel recognizes that, despite its efforts and achievements on behalf of the Class, "[i]t is important to avoid awarding 'windfall fees' and any appearance of having done so for the integrity of the judicial system, legal profession and Rule 23." *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 U.S. Dist. LEXIS 95437, at *36 (E.D. Pa. 2008). Furthermore, Co-Lead Counsel appreciates the Court's independent obligation to ensure reasonableness of any fee request. *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 281-82 (3d Cir. 2001).  As set forth herein, Co-Lead Counsel respectfully submits that its fee request of 25% of the $14,750,000 recovery is reasonable, especially in light of the obstacles presented and significant result achieved in this case. *See* 15 U.S. C. § 78u-4(a)(6).

## II.     HISTORY OF THE LITIGATION

Lead Plaintiffs' motion for preliminary approval amply outlines the history of the Litigation (ECF No. 126, at 1-3).  Lead Plaintiffs respectfully refer the Court to that filing, as well as to the Joint Declaration Of Donald R. Hall And Ramzi Abadou In Support Of (1) Lead Plaintiffs' Motion For Approval Of Settlement And Approval Of Plan Of Allocation; (2) Co-Lead Counsels' Motion For Award Of Attorneys' Fees And Reimbursement Of Expenses; And (3) Lead Plaintiffs' Request For Reimbursement Of Reasonable Costs And Expenses ("Joint Decl.") attached hereto, which further details the Litigation's history. The totality of circumstances shows the Settlement, Plan of Allocation, and fee request are reasonable.

### III.    ARGUMENT

#### A.    Legal Standards for Evaluating Attorneys' Fee Requests in Federal Securities Class Actions

The party seeking attorneys' fees "bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC*, 2012 U.S. Dist. LEXIS 183444, at *88 (S.D.N.Y. Dec. 18, 2012) (*citing Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Courts routinely employ two common methods to determine whether a fee is reasonable: (i) the percentage method; and (ii) the lodestar method.  In the former, the "court sets some percentage of the recovery as a fee." *Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000).  In the latter, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id*.

Under the PSLRA and Second Circuit authority, the percentage of recovery method is the preferred approach for evaluating fee requests.  The percentage method is supported and codified by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(6). By its own language, the "PSLRA limits any award of attorneys' fees and expenses to a 'reasonable percentage' of any recovery." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006). Thus, under the PSLRA, courts have held that "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions." *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2006).

Although district courts retain discretion over whether to apply the percentage-of-recovery approach or the lodestar method in determining attorneys' fees, the prevailing standard in this Circuit, and for common fund cases generally, is the percentage method. *See Blum*, 465 U.S. at 900 n.16. (noting that in common fund cases, "a reasonable fee is based on a percentage

of the fund bestowed on the class"); *Wal-Mart Stores Inc. v. U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (noting that "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (citations omitted). The lodestar method, on the other hand, "tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*; *see also, In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998) ("Simply put, it is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation.").

As a result, "[t]he Second Circuit encourages using the lodestar method only as a cross-check for the percentage method." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *43 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger*, 209 F.3d at 50).[3]  In sum, the legislative intent is to employ the percentage-of-recovery method as the primary measure of attorneys' fees awards in federal securities class actions. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2006).

"[N]o matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50 (citation omitted).

---

[3]        The lodestar cross-check is addressed in the brief at § III.C, *infra*.

The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *Rite Aid*, 396 F.3d at 301.

> **B.      Co-Lead Counsel's Fee Request Is Reasonable Under A Percentage-of-Recovery Analysis**

The fee requested in this case – 25% of the proposed Settlement Fund – is well within the parameters of fee awards in comparable actions in this Circuit. *See, e.g.*, *In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 20514, at *28 (S.D.N.Y. Feb. 19, 2016) (approving attorneys' fees of 33% of $7.5 million settlement fund in securities litigation prior to motion to dismiss); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 U.S. Dist. LEXIS 177175, at *33-34, 46 (S.D.N.Y. Dec. 19, 2014) ("the 33 1/3% fee requested by Co-Lead Counsel in this Action is consistent with percentage fees awarded in this Circuit and nationwide."); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *39 (S.D.N.Y. May 9, 2014) (awarding 33% of a $15 million settlement); *In re LaBranche Secs. Litig.*, Civ. No. 03-CV-8201, slip op. (S.D.N.Y. Jan. 22, 2009) (30% fee awarded in $13 million settlement); *In re Acclaim Entertainment, Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 98851, at *16-17 (E.D.N.Y. Oct. 2, 2007) (holding that attorneys' fees request of 30% of $13,650,000 settlement fund "is consistent with awards in similarly complex cases in this jurisdiction"); *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *32 (S.D.N.Y. Jan. 31, 2007) (30% of fee award of $15.175 million settlement fund of cash and stock); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (approving 33 1/3% of $11.5 million securities fraud class action settlement while motions to dismiss pending). *See also* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in*

*Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 245, 262 (2010) (reporting a mean fee-to-recovery ratio on securities class actions of 23% and a median of 25%).[4]

**C.     A Lodestar Cross-Check Further Supports the Requested Fee Award**

The alternative lodestar method, employed as a cross check, confirms the requested attorneys' fee is reasonable. Under Co-Lead Counsel's applicable billable rates at 9,526.70 total hours, the total lodestar is $4,959,793.00. *See* Joint Decl. at ¶¶ 132-140.  Thus, the requested attorney fee of $3,687,500.00 (representing 25% of the $14,750,000 Settlement Fund) represents a lodestar multiplier of 0.743.  Joint Decl. at ¶ 133.

Where, as here, the lodestar cross-check results in a negative multiplier, courts in the Second Circuit have consistently found that a negative lodestar is "a strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Cos.,* 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (negative multiplier of 0.92); *see e.g. City of Providence v. Aéropostale, Inc*., 2014 U.S. Dist. LEXIS 64517, at *38 (S.D.N.Y. 2014) (finding that a multiplier of 0.7 is "well below the parameters used throughout district courts in the Second Circuit, which affords additional evidence that the requested fee is reasonable."); *Jermyn v. Best Buy Stores, L. P.,* 2012 U.S. Dist. LEXIS 90289, at *26-27 (S.D.N.Y. 2012) ("Here the [0.39] lodestar multiplier is negative, and this is further indication of the reasonableness of the negotiated fee."); *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 514-15 (S.D.N.Y. 2009) (the "high percentage fee" of $195 million "still represent[ed] a negative multiplier" of 0.7 and "therefore [there was] no real danger of over-compensation.").  Accordingly, Co-Lead Counsel respectfully submits that the lodestar cross-check supports the reasonableness of the requested fee award.

---

[4]     By contrast, "[t]here is an emerging consensus in favor of tapered percentages for awards in megafund cases, prompted by record-breaking recoveries carrying the potential for windfall fees." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 U.S. Dist. LEXIS 78101, at *61 (S.D.N.Y. Sep. 28, 2006).  Here, the size of the Settlement does not warrant reducing the percentage requested, as a megafund settlement would do.

**D.      The *Goldberger* Factors Further Support the Requested Fee**

Co-Lead Counsel respectfully submit that an analysis of the *Goldberger* factors, as well as the above percentage-of-recovery and lodestar analyses, demonstrates that the present fee and expense request is reasonable and appropriate and should be approved by the Court.

**1.   Time and Labor Expended By Counsel**

The first *Goldberger* factor, the time and labor expended by Co-Lead Counsel, justifies the requested fee. Significant amounts of time and resources were devoted to the research, investigation and prosecution of this Action, producing an excellent recovery for the Class without the substantial expense, risk and delay of continued litigation. When this Settlement was reached, Co-Lead Counsel had committed extensive resources to understanding the facts and challenges posed by the claims and defenses that could impact any recovery for the Class.

Co-Lead Counsel have collectively spent over 9,500 hours researching, investigating, and prosecuting this case on behalf of the Class for an aggregate lodestar of approximately $4,959,793.00, and have incurred $570,507.99 in expenses. As further explained in the Joint Declaration, Co-Lead Counsel: (a) researched the facts and claims that formed the basis of an initial complaint; (b) extensively researched, briefed, and successfully argued Lead Plaintiffs' motion to consolidate the Related Actions, appoint lead plaintiffs, and approve their choice of counsel; (c) conducted an extensive investigation into the underlying facts, including retention of an accounting consultant to review and analyze years of Eletrobras' financial reports and related allegations concerning Operation Lava Jato, (d) consulted with experts on the issues of damages and market efficiency, (e) thoroughly reviewed the Company's annual reports, press releases, and financial statements, as well as analyst reports and myriad news articles detailing the (still ongoing) Brazilian federal investigation into bribery and corruption at Eletrobras; (f) drafted and filed two amended complaints on December 8, 2015 and February 26, 2016; (g) vigorously – and

triumphantly – opposed Defendants' motion to dismiss, and prepared supplemental briefing related to same; (h) prepared and served formal requests for production of documents and interrogatories upon Defendants, after which some 846,000 pages of documents were received and reviewed; (i) defended the depositions of both Lead Plaintiffs, covered the depositions of two of Providence's investment advisors, and defended the deposition of Lead Plaintiffs' expert, Dr. Steven Feinstein; (j) took the deposition of Defendants' expert, Dr. René Stulz; (k) worked with various experts and consultants, including an expert in international accounting standards, economists, and loss causation/damages consultants; (l) subpoenaed the Financial Industry Regulatory Authority ("FINRA"), receiving and reviewing their document production; (m) prepared and briefed Lead Plaintiffs' motion to certify a class of investors; (n) noticed and were preparing for the 30(b)(6) depositions of three Eletrobras representatives; (o) engaged in informal settlement negotiations; (p) submitted detailed mediation briefs to Mr. Jed D. Melnick of JAMS and successfully mediated to obtain a settlement in principal for an amount that represents an outstanding recovery relative to Lead Plaintiffs' estimation of damages; (q) sought and evaluated competitive bids from multiple claims administrators for administration of this Settlement; (r) prepared and filed the motion for preliminary approval and stipulation of settlement, later supplementing same to obtain Court approval on July 19, 2018; (s) prepared and oversaw the publication of the Summary Notice of Pendency of Class Action in the *Investor's Business Daily* and over the *PR Newswire* on September 17, 2018; and (t) oversaw the settlement administration process, including, *inter alia*, mailing of the Notice and Claim Form, supplying the Notice and Claim Form to the Class, notifying brokerage firms or other nominee accounts of the appropriate manner to provide individual notice to Class members, tracking requests for

exclusion, and assisting shareholders with questions regarding the criteria for recovery and the procedure for filing claims.

Co-Lead Counsel's work was divided between partners, associates, project attorneys, staff attorneys, and paralegals. As attested to in the Joint Declaration, work assignments were allocated in a manner deemed by the supervising partners to be the most efficient and cost effective. Associate attorneys, staff attorneys and project attorneys were utilized to accomplish experience-appropriate projects, while more senior attorneys spent time supervising projects, reviewing or revising final work product before it was submitted to the Court, the mediator, or served on Defendants and/or third parties. *See* Joint Decl. at ¶¶ 135-139. Thus, Co-Lead Counsel submits that time spent on this case accurately reflects the work performed, that tasks were appropriately delegated, and the billing rates are reasonable and appropriately discounted. The first *Goldberger* factor supports Co-Lead Counsel's fee request.

### 2. The Magnitude and Complexity of the Litigation

*Goldberger*'s second factor reveals that the magnitude and particular legal complexities of this securities class action support Co-Lead Counsel's fee request. "Most class actions are inherently complex and settlement avoids the costs, delays, and a multitude of other problems associated with them." *In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citation omitted). Courts within this Circuit have found securities actions particularly complex within the class action arena. *See In re Veeco Instruments Secs. Litig.*, 2007 U.S. Dist. LEXIS 85554, at *18 (S.D.N.Y. 2007) ("A securities case, 'by its very nature, is a complex animal.'") (quoting *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002)). Furthermore, courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). *See also In re AOL*

*Time Warner, Inc., Sec. & "ERISA" Litig.*, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated…where a number of controlling decisions have recently shed new light on the standard for loss causation.").

Although securities fraud class actions are generally seen as complicated cases that require the participation of highly skilled and specialized attorneys, this case involved particularly complex and unique issues of fact and law that more than justify the requested fee under *Goldberger*. *See In re "Agent Orange" Prod. Liab. Litig.*, 1985 U.S. Dist. LEXIS 23652, at *43 (E.D.N.Y.  1985) ("The more novel and complex the issues, the greater the risk of litigation"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (acknowledging that higher fees may be appropriate in cases where "the factual and legal issues were [] exceptionally 'novel.'").

On the one hand, the facts of this case required Co-Lead Counsel to investigate and analyze foreign accounting standards and principles, as well as their application to, *inter alia*, Eletrobras' capitalization of expenses and its use of Special Purpose Entities ("SPEs") – not the more familiar generally accepted accounting principles of the United States. *See In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 20514 (S.D.N.Y.  2016) (approving 33 1/3% of common fund as fee award, noting "[h]ere, the securities claims advanced by Plaintiffs involved numerous complex factual issues relating to accounting, which were complicated by language issues and accounting procedures in the [People's Republic of China] that differed from those in this country."). One of Co-Lead Counsel's attorneys, who is also a Certified Public Accountant, performed a high-level review of the international accounting standards applicable here.

Additionally, Co-Lead Counsel hired an external accounting consultant to perform a detailed analysis of, among other things, the use and alleged abuse of SPEs by the Defendants and the extent to which alleged bribes and other expenditures were hidden from investors by capitalizing them as part of fixed asset values. The consultant's insight was invaluable in preparing the detailed allegations of the First and Second Consolidated Amended Complaints.

While many of Lead Plaintiffs' claims survived Defendants' motion to dismiss, absent the Settlement, the litigation would have been expensive and time consuming.  Defendants have vigorously opposed Lead Plaintiffs' motion for class certification, and undoubtedly would have filed a motion for summary judgment, motions to exclude Lead Plaintiffs' intended expert witnesses, and motions *in limine* to exclude crucial evidence before trial. Additional discovery, including deposing foreign witnesses and expert discovery on technical accounting, loss causation, and damages matters, would have expended substantial time and effort. Further, assuming Lead Plaintiffs' victories at class certification and summary judgment, trial preparation would have required many additional hours of work at great expense. Trial on the merits would have been very complicated for jurors given the language barrier, complex fact issues (concerning allegations of inflated contract prices across dozens of contracts for the development of nine separate power plants, between numerous Eletrobras subsidiaries and SPEs and scores of contractors and other third parties (including money launderers and shell companies)), complex accounting issues, and legal issues regarding loss causation and damages. Liability issues alone would have involved substantial attorney and expert time, and the introduction of voluminous documentary and deposition evidence, as well as vigorously contested motions, would all result in considerable expenditures of judicial resources.

Further exacerbating these costs is this District's requirement that foreign-language documents be accompanied by a certified translation before use in summary judgment or trial.[5] Without them, the Court could not review or rely upon foreign-language documents, even if properly authenticated in a declaration. *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016) (citations omitted); *see also Ediciones Quiroga, S.L. v. Fall River Music*, 1998 U.S. Dist. LEXIS 19039, at *5 n.3 (S.D.N.Y. Dec. 4, 1998) (At summary judgment stage, "[t]ranslations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence. All such translations are therefore disregarded."). Here, substantial portions of Defendants' document production are in their native Portuguese; both sides would incur considerable time and expense to obtain the necessary certified translations.

Moreover, "even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003).  In sum, the magnitude and complexity of this securities class action support a conclusion that the requested fee is reasonable and fair.

### 3.  The Risk of the Litigation Supports the Requested Fee

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA*

---

[5]    Certified translations include a sworn statement by its author representing (i) its contents are true and accurate, (ii) the translator's identity, and (iii) the translator's qualifications to translate the relevant languages. *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 555 n.9 (S.D.N.Y. 2013).  While Defendants have produced certain already-translated documents, it is unclear if they would be deemed admissible by the Court.

*Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). *See also In re Telik*, 576 F. Supp. At 592 ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 U.S. LEXIS 8608, at *11 (S.D.N.Y. 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). As a Court in this District has previously noted:

> Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful. From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails. Because of the nature of a contingent practice where cases are predominantly complex lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

*City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *40-41 (S.D.N.Y. 2014). Such is the case here. *See* Joint Decl. at § VI(B)(3).

In addition to advancing litigation expenses, Co-Lead Counsel faced substantial risks that the Defendants would succeed at any one of many possible junctures in the litigation. *See* Joint Decl. at § IV (discussing the risks facing continued litigation), *id*. at § VI(B)(3). As the Court is aware, Lead Plaintiffs' motion for class certification was pending at the time that the Settlement was reached. If Defendants persuaded the Court that a class could not be certified, then the case would effectively be over. If Lead Plaintiffs did succeed in certifying a class, they would still face vigorous opposition from Defendants at the summary judgment stage and trial.

Moreover, even if Lead Plaintiffs prevailed at trial, successful collection of any judgment awarded is by no means certain. This Court has previously noted that enforcing a securities fraud judgment in an overseas court can be a dubious proposition, stating "…it is not certain that courts in Brazil would enforce a U.S. securities fraud class action judgment." *In re Sadia S.A. Sec. Litig.*, 2011 U.S. Dist. LEXIS 149107, at *5 (S.D.N.Y. 2011) (questionable enforcement in Brazil weighs in favor of final approval); *see also In re Fuqi Int'l, Inc. Sec. Litig*., 2016 U.S. Dist. LEXIS 20514, at *21 (S.D.N.Y. Feb. 19, 2016) (same, involving Chinese defendants). Defendants' own SEC filings warn investors as much, suggesting that attaching Brazilian assets to enforce such a judgment may be impossible:

> Substantially all of our assets, as well as the assets of [our directors and officers], are located in Brazil. As a result, it may not be possible to effect service of process within the United States or other jurisdictions outside Brazil upon these persons, attach their assets, or enforce against them or us in United States courts, or the courts of other jurisdictions outside Brazil, judgments predicated upon the civil liability provisions of the securities laws of the United States or the laws of other jurisdictions.

ECF No. 61-1 at 34.[6,7] Relatedly, the fact that the Defendant Company is a majority State-owned enterprise of Brazil subjects Eletrobras' leadership and ownership structure to the winds

---

[6] Eletrobras' 2014 Annual Report on Form 20-F, filed on October 11, 2016. Substantially similar disclosures appeared in the 2015 Annual Report; *see, e.g.* ECF No. 61-2 at 32.

of political change, whose volatility might negatively impact Lead Plaintiffs' ability to engage in future settlement discussions or collect on any judgment that may have been rendered in our favor.

Thus, Co-Lead Counsel respectfully submit that the significant risks of continued litigation and collection support the award of attorneys' fees.

### 4.  Quality of Representation

When evaluating *Goldberger*'s "quality of representation" factor, courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). Co-Lead Counsel practice extensively in complex federal civil litigation, particularly the litigation of securities class actions, and has successfully litigated these types of actions in courts throughout the country. *See* Exhibit 1 to the standalone Declaration of Ramzi Abadou On Behalf of Kahn Swick & Foti, LLP In Support of Application of Lead Plaintiffs' Counsel for An Award of Attorneys' Fees and Expenses ("Abadou Decl."); *see also* Exhibit 1 to the Declaration of Donald Hall On Behalf of Kaplan Fox & Kilsheimer, LLP In Support of Application of Lead Plaintiffs' Counsel for An Award of Attorneys' Fees and Expenses ("Hall Decl."). To achieve a $14,750,000 settlement in this Action, despite Defendants' strong arsenal of arguments in their motions to dismiss and opposition to class certification, took a great deal of legal acumen and negotiating skill. Here, Defendants were represented by Davis Polk & Wardwell LLP, an international law firm of exceptional skill,[8] with a reputation for vigorous advocacy in the

---

[7]       Pagination refers to the Annual Reports as originally printed, not the ECF-generated numbers at the top of each document.

[8]       *See, e.g., Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 586 F. Supp. 2d 732, 774 n.49 (S.D. Tex. 2008) (listing Davis Polk & Wardwell "among the many excellent firms" involved);

defense of complex civil cases, particularly securities class actions. *See Maley*, 186 F. Supp. 2d at 373 (to determine the quality plaintiffs' counsel, the quality and vigor of opposing counsel is likewise significant); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) (same).

This Settlement represents a highly favorable result for the Class, attributable to the diligence, determination, and hard work by Co-Lead Counsel, who developed, litigated, and successfully negotiated the Settlement against a highly-skilled and determined defense team. Accordingly, the quality of representation factor weighs heavily in favor of supporting Co-Lead Counsel's fee request.

### 5.   The Requested Fee in Relation to the Settlement

As described more fully at §III.B, *supra.*, the 25% fee requested is reasonable, falling in line with (and in some cases under) fee awards in comparable actions in this Circuit.  Likewise, the negative lodestar multiplier of 0.743 is a testament to the reasonableness of the fee requested, under the law within the Second Circuit.  *See* §III.C, *supra.*

### 6.   Public Policy Considerations Support the Requested Fee

Co-Lead Counsel respectfully submit that public policy considerations - the sixth and final *Goldberger* factor – support the 25% fee request.  *See Goldberger*, 209 F. 3d at 50. Courts in the Second Circuit have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *In re Merrill Lynch*, 249 F.R.D. at 141-42. "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate

---

*Glob. Crossing*, 225 F.R.D. at 467 (calling Davis Polk & Wardwell one of "nation's leading law firms" and noting its "vigorous opposition" to plaintiffs' claims).

financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

Federal securities laws are remedial in nature – therefore, to effectuate their purpose of protecting investors, courts encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court considers private securities actions such as this "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).

Plaintiffs' counsel in such cases are typically retained on a contingent basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. The typical class representative is likely incapable of pursuing long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated would be able to exploit these efforts at no cost or risk to themselves. *See Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. 2007) ("[T]he class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action.") (citation omitted). Furthermore, the significant expense, combined with the high degree of uncertainty of ultimate success, means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by

"acting as 'private attorneys general.'" *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992). Thus, "public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.* Such is the case here.

Here, Co-Lead Counsel assumed substantial risk by undertaking this action and achieved a significant benefit to the Class. An important public policy is served by awarding attorneys' fees adequately compensating counsel. Co-Lead Counsel respectfully submits that the requested fee of 25% of the Settlement Fund adequately compensates Co-Lead Counsel for its time, effort, risk undertaken, and particularly meaningful achievements in this case.

### E.     The Class' Reaction to the Fee Request

The Class' positive reaction following the dissemination of the Notice, Claim Form, and Summary Notice, which advised the Class that Co-Lead Counsel may seek a higher fee than what Co-Lead Counsel have requested, further supports the fee request. The Notice explains to Class Members that Co-Lead Counsel would submit a request for attorneys' fees, potentially reaching a maximum of 28.5% of the Settlement Fund. In accordance with the Preliminary Approval Order, on or before September 6, 2018, the Court-appointed Claims Administrator, Epiq Systems, Inc. ("Epiq"), mailed the Notice and Claim Form to Class Members identifiable from transfer agent records and to brokers and nominees, published the Summary Notice in the *Investor's Business Daily* and over the *PR Newswire* on September 17, 2018. *See* Villanova Decl., at ¶¶ 3-10. As of October 30, 2018, Epiq has mailed 57,108 Notice packets to potential Class Members and received 171 Proofs of Claim. *See* Villanova Decl., at ¶¶ 9, 19.

To date, no Class Members have objected to the Settlement, nor to the notice that Co-Lead Counsel may seek a fee award not to exceed 28.5% of the Net Settlement Fund and

reimbursement of litigation expenses not to exceed $850,000.00. Villanova Decl., at ¶ 20. Similarly, no valid request(s) for exclusion has/(have) been received. *Id.*, at ¶ 18.  Although the November 14, 2018 deadline to object to any aspect of the Settlement, including the request for fees and expenses, has not yet passed, the absence of objections supports Co-Lead Counsel's fee and expenses requests. "[S]uch a low level of objection is a 'rare phenomenon.'" *Rite Aid*, 396 F.3d at 305 (citation omitted).  Accordingly, the Class' positive reaction to the Settlement further supports the fairness of the fee request.  It reasonably follows that the Class would further approve the 25% fee request actually sought here – an amount 3.5% *lower* than the maximum originally noticed to potential Class Members.

### F.  Co-Lead Counsel's Request for Reimbursement of Expenses

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class*." In re Flag Telecom Holdings Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *86 (S.D.N.Y. 2010). "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re EVCI*, 2007 U.S. Dist. LEXIS 57918, at *56.  In the Notice disseminated to the Class, Co-Lead Counsel stated that it would not seek reimbursement of expenses exceeding $850,000.00.[9]  Co-Lead Counsel respectfully requests reimbursement of expenses in the amount of $570,507.99, which were reasonably incurred during the prosecution of this action, and which is an amount well within the $850,000.00 expense cap amount conveyed to Class Members in the Notice. *See, generally,* Joint Decl. at §VI.C.

The instant expenses were necessary to litigate a complex securities action; the bulk of them derive from professional services rendered by experts, consultants, investigators and the costs of mediation, which were all critical to Lead Plaintiffs' success in achieving the proposed

---

[9]      *See* Villanova Decl., Ex. A (the Notice) at ¶¶ 5, 82.

Settlement. The remaining expenses are attributable to copying costs, travel, delivery costs, filing fees, and other incidental expenses incurred in the ordinary course of litigation, and are typical of a class action and reimbursable under applicable law. *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys…[and] [f]or this reason, they are properly chargeable to the Settlement Fund."). *See also Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *17. Co-Lead Counsel has carefully reviewed its expenses to ensure that they were reasonably incurred and necessary to furthering the interests of the Class during the course of the litigation. Accordingly, Co-Lead Counsel respectfully submits that its reimbursement of $570,507.99 in expenses should be granted.

### G. Request for Reimbursement to the Lead Plaintiffs for Their Out-Of-Pocket Time and Expenses Directly Related to Their Representation of the Settlement Class

Finally, Lead Plaintiffs respectfully suggest that the time and out-of-pocket expenses that each Lead Plaintiff directly and reasonably incurred for their services to the Class in connection with this Action should also be reimbursed. The Notice to potential Class Members advised that the request for reimbursement (not to exceed a ceiling of $850,000.00) could also include the reasonable costs and expenses of the Lead Plaintiffs directly related to their representation of the Settlement Class. *See* Villanova Decl., Ex. A at ¶¶ 5; 82. Having received no objections to date from potential Class Members, Lead Plaintiffs submit their request for the Court's consideration.

The attached Declarations, Lead Plaintiff City of Providence, Rhode Island's Declaration in Support of Application for Reimbursement of Costs and Expenses in Connection with Its Representation of The Class and In Support of The Settlement ("Providence Decl.")

and Lead Plaintiff Dominique Lavoie's Declaration in Support of Application for Reimbursement of Costs and Expenses in Connection with His Representation of The Class and In Support of The Settlement ("Lavoie Decl.") provide support for their requested reimbursement amounts of  $8,179.12 and $13,416.00, respectively, to compensate them for their time and expenses incurred in their roles as Lead Plaintiffs and representatives of the Class.  *See, e.g*., Providence Decl. at ¶ 7; Lavoie Decl. at ¶ 10.

Even when combined to the expenses sought by Co-Lead Counsel, the total remains some $257,896.89 *less* than the $850,000.00 maximum noticed to the Class.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Lead Plaintiffs' motion for: (i) an award of attorneys' fees of 25% of the Settlement Fund; (ii) reimbursement of Co-Lead Counsels' expenses reasonably and necessarily incurred in prosecuting and resolving the Action, totaling $570,507.99, plus interest; and (iii) reimbursement in the amounts of  $8,179.12 and $13,416.00 for Providence and Mr. Lavoie, respectively, to compensate them for their time and expenses incurred in their roles as Lead Plaintiffs and representatives of the Class.

Dated: October 31, 2018                    Respectfully Submitted,

**KAHN SWICK & FOTI, LLP**

By:  ____*/s/ Ramzi Abadou*_____
Ramzi Abadou (admitted *pro hac vice*)
912 Cole Street, # 251
San Francisco, CA 94117
Telephone: 504-455-1400
Facsimile: 504-455-1498

-and-

[continued on next page]

23

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
Alexander Burns (admitted *pro hac vice*)
Alayne Gobeille (admitted *pro hac vice*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504-455-1400
Facsimile: 504-455-1498


*/s/ Donald R. Hall*
_____
**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Melinda Campbell
Jason A. Uris
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Co-Co-Lead Counsel for the Class*

**CERTIFICATION OF COMPLIANCE:**

The undersigned certifies that, in accordance with the *Individual Practices of Judge John G. Koeltl*, dated March 2018, this memorandum is: (i) 6,802 words in length (exclusive of the cover page, certification of compliance, table of contents, and table of authorities); (ii) double spaced (including footnotes); and (iii) in a legible font, using reasonable margins.

*/s/ Ramzi Abadou*
Ramzi Abadou

**CERTIFICATE OF SERVICE**

I, Ramzi Abadou, hereby certify that, on Wednesday, October 31, 2018, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Ramzi Abadou*
Ramzi Abadou