**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ELETROBRAS SECURITIES LITIGATION | Case No.: 15-cv-5754 (JGK) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR APPROVAL OF ADMINISTRATIVE DETERMINATIONS AND <u>AUTHORIZATION TO DISTRIBUTE THE NET SETTLEMENT FUND</u>**

# **TABLE OF CONTENTS**

**Page(s)**

Table Of Authorities ..........................................................................................................................iii

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ................................................................................................................ 2

III. CLAIMS ADMINISTRATION......................................................................................... 3

    A. Procedures and Review.......................................................................................... 4

    B. Recommended Disposition of Proofs of Claim ...................................................... 5

        1. Timely and Valid Claims............................................................................ 5

        2. Late, But Otherwise Valid, Claims............................................................. 5

        3. Rejected Claims ......................................................................................... 6

    A. Claimant Requesting Judicial Review ................................................................... 7

IV. PROPOSED DISTRIBUTION PLAN FOR NET SETTLEMENT FUND ....................... 8

V. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .......................................... 10

VI. RELEASE OF CLAIMS AND DOCUMENT RETENTION .......................................... 11

VII. CONCLUSION................................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Crazy Eddie Sec. Litig.*,
   906 F. Supp. 840 (E.D.N.Y. 1995) .................................................................................... 6, 7

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001)..................................................................................................... 6

*In re Visa Check/MasterMoney Antitrust Litig.*,
   2011 WL 5029841 (E.D.N.Y. Oct. 24, 2011)......................................................................... 10

*Plotz v. NYAT Maintenance Corp.*,
   2006 WL 298427 (S.D.N.Y. Feb. 6, 2006)............................................................................. 10

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................................ 1

Lead Plaintiffs, the City of Providence, Rhode Island and Dominique Lavoie (collectively, "Lead Plaintiffs"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully submit this memorandum in support of their motion for entry of an Order Approving Administrative Determinations and Authorizing Distribution of the Net Settlement Fund ("Distribution Order") in the above-captioned action ("Action"). This motion and memorandum are submitted in conjunction with the accompanying Declaration of Jaime Firenze Regarding Distribution Plan ("Firenze Declaration"), submitted on behalf of the Court-approved claims administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator").[1]

Pursuant to the terms of the Settlement, Defendants have no interest in the relief requested by this motion. *See* Stipulation ¶8.2.

## I.  INTRODUCTION

On December 12, 2018, the Court approved the $14,750,000 Settlement between Lead Plaintiffs, for themselves and on behalf of the Settlement Class, and Defendant Centrais Eletricas Brasileiras S.A. ("Eletrobras"). Today, the claims administration determination process is complete, with 18,866 claims fully processed and analyzed and 2,024 eligible claims ready for payment. While approximately 16,842 claimants were ineligible for payment, only one ineligible claimant requests judicial review of the recommended rejection of their claims.

If entered by the Court, the Distribution Order will, among other things, (i) approve Epic's administrative determinations regarding acceptance and rejection of the Proofs of Claim, as detailed in the Firenze Declaration and accompanying exhibits; (ii) establish January 31, 2020

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the June 29, 2018 Stipulation and Agreement of Settlement (ECF No. 127, the "Stipulation") and exhibits thereto.

as the bar date beyond which no new claims will be allowed; (iii) direct distribution of the Net Settlement Fund in accordance with the proposed Distribution Plan set forth in the Firenze Declaration; (iv) approve Epiq's fees and expenses in the amount of $454,305.94 in connection with the administration of the Settlement and the initial distribution of the Net Settlement Fund; (v) release all claims related to the administration process; and (vi) authorize destruction of all paper and electronic copies of Proofs of Claim and supporting documentation one year after all funds have been distributed.

## II. BACKGROUND

The terms of the Settlement are embodied in the Stipulation. Pursuant to the Stipulation, Eletrobras paid a Settlement Amount of $14,750,000 to settle the claims alleged in the Action. The Settlement Amount has been deposited in an interest-bearing escrow account.

On August 17, 2018, this Court entered an order preliminarily approving the Settlement. ECF No. 131. Pursuant to this order, Lead Counsel retained Epiq to: (i) mail the Court-approved Notice of (I) Pendency and Proposed Settlement of Class Action and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for Award of Attorneys' Fees and Reimbursement of Lead Plaintiffs' and Lead Counsel's Litigation Expenses (the "Notice") and the Proof of Claim and Release ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Mailed Notice") to potential Settlement Class Members and nominees; (ii) publish the Summary Notice; (iii) create and maintain a toll-free helpline for inquiries during the course of the claims administration; (iv) create and maintain a settlement website containing case-specific documents at www.EletrobrasSecuritiesLitigation.com; and (v) receive and process Proofs of Claim.

On December 12, 2018, the Court held a hearing to consider the proposed Settlement. By Final Judgment and Order of Dismissal With Prejudice dated December 12, 2018 (ECF No.

2

142), the Court granted final approval of the Settlement and the Plan of Allocation and directed the parties to implement the Stipulation in accordance with its terms and provisions. No person appealed the Court's final approval order. Thus, under paragraph 8.1 of the Stipulation, the Effective Date for the Settlement has occurred, and the Net Settlement Fund can be distributed.

Accordingly, Lead Plaintiffs seek entry of the proposed Distribution Order, approving the distribution of the Net Settlement Fund to Authorized Claimants in accordance with Epic's recommendations.

### III. CLAIMS ADMINISTRATION

Epiq mailed more than 119,300 Notice Packets to potential Members of the Settlement Class, brokers, and other nominees. Firenze Decl. ¶4. Under the terms of the Preliminary Approval Order and as set forth in the Notice, all Members of the Settlement Class wishing to participate in the distribution of the Net Settlement Fund were required to submit Proofs of Claim no later than January 4, 2019. As described in a February 1, 2019 filing with the Court (ECF No. 149), Epiq continued to receive and process Claims after the January 4, 2019 deadline. Through January 31, 2020, Epiq has received and processed 18,866 Proofs of Claim. *Id*. ¶¶5, 32.

With Epiq's careful review and processing of the Proofs of Claim, as detailed in the sections below, Epiq has prepared detailed reports of: (1) Authorized Claimants who submitted timely and eligible claims; (2) Authorized Claimants who submitted late but otherwise eligible claims; and (3) all wholly rejected or ineligible Proofs of Claim received through January 31, 2020. These reports are annexed to the Firenze Declaration as Exhibits C-1, C-2, and C-3, respectively. Firenze Decl. ¶34. Epiq has also identified one disputed claim from a claimant requesting judicial review of Epiq's determination that its Proof of Claim should be rejected. *Id.* ¶24 and Ex. B (correspondence relating to the Disputed Claim).

### A. Procedures and Review

With respect to Epiq's extensive review process, 1,784 Proofs of Claim submitted by mail were sorted, prepped, scanned along with supporting documentation, and entered into an electronic database. Firenze Decl. ¶7. The Proofs of Claim were then evaluated and processed using internal codes to identify the types and conditions of the Proofs of Claim. *Id.* ¶8. In addition, 17,082 Proofs of Claim were filed online through the settlement website. *Id.* ¶10. Electronic claims are typically filed by institutional investors, who may have hundreds, thousands, or even millions of transactions during the Class Period. *Id.* These Proofs of Claim were reviewed and evaluated by an Electronic Claims Filing Team and coded similarly to the manually-filed Proofs of Claim. *Id.* ¶¶12-13. Epiq also reviewed all Proofs of Claim to ensure that they were not submitted by, or on behalf of, persons who either requested exclusion from the Settlement Class or persons who were excluded from the Settlement Class by definition. *Id.* ¶15.

Epiq next made substantial efforts, by way of deficiency letters, as well as telephone calls and emails with claimants, to cure any deficiencies in Proofs of Claim and to notify claimants with conditions of ineligibility. Firenze Decl. ¶¶18-19 & Ex. A (exemplar deficiency letter). Epiq mailed 1,165 deficiency letters to claimants. *Id.* ¶19. Responses to the deficiency letters were then scanned, reviewed, and evaluated. *Id.* ¶20. Epiq made similar efforts to cure any deficiencies in electronically submitted claims. *Id.* ¶¶21-22. Epiq mailed status letters to 122 electronic filers who submitted 15,843 deficient or ineligible electronic Claims, indicating accounts within a filing that were deficient and/or rejected, and identifying individual transactions and entire electronic claims that were found to be deficient or ineligible so that the filer on behalf of the claimant had the opportunity to correct the deficient condition or contest the determination of ineligibility. *Id.* ¶¶21(a)-(b). Responses by the electronic filers were then reviewed, scanned, and evaluated. *Id.* ¶22.

All deficiency and status letters advised claimants that to the extent the deficiency or condition of ineligibility was not cured, the Proof of Claim would be recommended for rejection. Firenze Decl. ¶21(c). Deficiency and status letters also advised claimants that if the claimant disputed Epiq's administrative determination, the claimant could request this Court's review of the determination. *Id.* ¶21(d). Eight claimants initially requested Court review. *Id.* ¶24. Epiq attempted to contact all claimants requesting Court review to answer questions, explain Epiq's determination of their claim's status, and facilitate submission of missing information or documentation, where applicable. *Id*. These efforts resulted in the curing of deficiencies or retraction of requests for Court review for all but one of the claimants. *Id.*

The claims administration was also subject to Epiq's rigorous Quality Assurance review process, which allowed Epiq to verify, audit, and test the claims administration program. Firenze Decl. ¶¶28-30. These efforts allowed for accuracy in the review process as well as in Epiq's eligibility determinations.

   **B.**  **Recommended Disposition of Proofs of Claim**

     **1.**  **Timely and Valid Claims**

Lead Plaintiffs respectfully request that the Court authorize a *pro rata* distribution of the Net Settlement Fund to 2,024 eligible Authorized Claimants identified by Epiq. Among the more than 18,000 Proofs of Claim received and processed to date, 1,908 were determined by Epiq to be valid and timely submitted. Firenze Decl. Ex. C-1.

     **2.**  **Late, But Otherwise Valid, Claims**

Lead Plaintiffs respectfully request that the Court approve the acceptance of late, but otherwise valid, claims (claims postmarked or received after the January 4, 2019 deadline but received by January 31, 2020), and authorize a *pro rata* distribution of the Net Settlement Fund

to these claimants.[2] Through January 31, 2020, Epiq received and processed 615 Proofs of Claim that were postmarked or electronically submitted after the Court-established January 4, 2019 deadline. Firenze Decl. ¶¶26, 34, and Ex. C-2. Of these Proofs of Claim, 116 are, but for their late submission, otherwise eligible in whole or in part. *Id.* ¶26. The late but otherwise valid claims have a total Recognized Claim amount of $5,964,964.05 and comprise approximately 11.4% of the overall total Recognized Claim amount of timely valid claims plus late but otherwise valid claims ($52,225,016.28). *Id*. ¶35. Thus, if the Court permits these claims to be eligible for payment, the amount that every Authorized Claimant will receive will only be reduced a marginal amount from what he or she would have received if these claims were excluded. Lead Plaintiffs respectfully request that these late but otherwise valid Proofs of Claim be approved as eligible for payment.

### 3. Rejected Claims

Lead Plaintiffs respectfully request that the Court confirm the rejection of the 16,842 claims designated for rejection by Epiq. Among the more than 18,000 Proofs of Claim received and processed, a total of 16,842 have been rejected after exhaustion of the deficiency process. Firenze Decl. ¶¶32-33 and Ex. C-3.

---

[2] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Stipulation. The Stipulation provides that "[a]ll Proof of Claim and Release forms must be submitted by the date specified in the Notice unless such period is extended by order of the Court." Stipulation ¶6.3(b). The Plan of Allocation set out in the Notice also states that "[t]he Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Settlement Class." Notice ¶45. Late claims are commonly accepted in class action settlements. *See, e.g., In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 846-47 (E.D.N.Y. 1995) (accepting certain late claims); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) (accepting late claim).

Additionally, Lead Plaintiffs respectfully request the Court order that no Proof of Claim received after January 31, 2020 be eligible for payment for any reason whatsoever. As recommended by Epiq, in order to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cutoff date after which no other claims may be accepted. *See* Firenze Decl. ¶27; *see also In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840 (E.D.N.Y. 1995) ("courts have certainly agreed, that 'a cutoff date is essential and at some point the matter must be terminated'") (citation omitted).

### A.     Claimant Requesting Judicial Review

Lead Plaintiffs respectfully request that the Court confirm Epiq's determination of rejection of one claim seeking judicial review. The deficiency and rejection letters mailed by Epiq specifically stated that claimants had the right to contest Epiq's administrative determination rejecting their Proofs of Claim and to request review by the Court. Firenze Decl. ¶¶23-24 and Ex. A. Epiq initially received requests for judicial review from eight claimants contesting Epiq's administrative rejection of their Proofs of Claim. *Id.* ¶24. As of January 31, 2020, however, Epiq has been able to resolve seven of these disputes after communicating with the claimants and/or upon receipt of additional information or documentation, reducing the number of disputes to just one claim. *Id.* ¶24.

The claim of the one claimant seeking Court review was rejected because the claim did not calculate to a Recognized Loss under the Plan of Allocation. Firenze Decl. ¶25. Specifically, the claimant with claim number 302 purchased 650 shares on December 30, 2010 and sold the shares on November 16, 2012. Both the purchase and sale transactions are within the same period included in Table-1 of the Plan of Allocation resulting in a loss of $0. Accordingly, the claimant did not suffer cognizable damages and the claim was properly rejected.

7

## IV.     PROPOSED DISTRIBUTION PLAN FOR NET SETTLEMENT FUND

Epiq, in consultation with Lead Counsel, has developed the Distribution Plan set forth in the Firenze Declaration ¶37, which will allow for the fair and expeditious distribution from the Net Settlement Fund, pursuant to the Plan of Allocation and Stipulation, until the fund is exhausted. The Distribution Plan provides that:

(a)     Epiq will distribute 100% of the available balance of the Net Settlement Fund—after deducting any Notice and Administration Costs, Taxes, and Tax Expenses—to Authorized Claimants who would receive at least $10.00 based on their Recognized Loss in comparison to the total Recognized Losses of all Authorized Claimants.

(b)     In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION."[3]

---

[3] As described in footnote 2 of the Firenze Declaration, for Authorized Claimants whose checks are returned as undeliverable, Epiq will attempt to locate new addresses by reasonable methods. Where a new address is located, Epiq will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, Epiq will issue replacements. Distribution re-issues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, Epiq will void the initial payment prior to re-issuing a payment. Authorized Claimants will be informed that, if they do not cash their distribution checks within the 90 days from the mail date, or they do not cash check reissues within 30 days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited and the funds will be re-allocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is

8

(c) Authorized Claimants who do not negotiate their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not negotiate their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

(d) Consistent with the Plan of Allocation, after Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their distribution checks as described in the Firenze Declaration ¶37, but no earlier than six (6) months after the initial distribution, Lead Counsel, in consultation with Epiq, will determine whether it is cost-effective to conduct a second distribution of the Net Settlement Fund. Additional re-distributions may occur thereafter in six (6) month intervals until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective.

(e) If further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit charitable organization(s) serving the public interest, designated by Lead Counsel.

Lead Plaintiffs submit that the administration of the Settlement and the proposed Distribution Plan fully complies with the terms of the Stipulation and the Plan of Allocation previously

---

received prior to the next planned distribution. Requests for reissued checks in connection with any second distribution and any subsequent distributions will be handled in the same manner.

approved by the Court. Moreover, distribution of any residual funds to a charitable organization as described above is appropriate and commonly approved by courts. *See In re Visa Check/MasterMoney Antitrust Litigation*, 2011 WL 5029841, *8 (E.D.N.Y. Oct. 24, 2011) (charitable payments are appropriate "where the amount to be distributed to the remaining class members is small relative to the administrative costs of a direct distribution"); *Plotz v. NYAT Maintenance Corp.*, No. 98 Civ. 8860(RLE), 2006 WL 298427, at *1-2 (S.D.N.Y. Feb. 6, 2006) (approving charitable donation of remaining settlement funds). Accordingly, Lead Plaintiffs respectfully request that the Court enter the accompanying proposed Distribution Order.

## V. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

Pursuant to the Stipulation, the Settlement Fund shall be used to pay Notice and Administration Expenses incurred in connection with noticing, administering, and distributing the Settlement. *See* Stipulation ¶6.2(a). Epiq was retained to provide notice to the Members of the Settlement Class and administer the claims received with regard to the Settlement. In connection with that work, Epiq disseminated more than 119,300 copies of the Notice, received and responded to thousands of communications from potential Members of the Settlement Class, and received and evaluated more than 18,000 Proofs of Claim. *See* Firenze Decl. ¶¶4-5, 7, 10-11, 32-35.

Lead Plaintiff and Epiq now seek leave to pay a total of $454,305.94 for Epiq's outstanding fees and expenses and the reasonable planned expenses that will be incurred with this next phase of administering the distribution of the Settlement. Through March 31, 2020, Epiq's outstanding fees and expenses are $412,305.94, which includes fees and expenses of $300,576.99 and broker/nominee charges of $111,728.95. Firenze Decl. ¶36 and Exhibit D (listing Epiq's invoices). In addition, Epiq's fees and expenses for April 2020 through the completion of the initial distribution are anticipated to be $42,000, bringing the total fees and

10

expenses through the initial distribution to $454,305.94. Firenze Decl. ¶36.[4]

## VI. RELEASE OF CLAIMS AND DOCUMENT RETENTION

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to eligible Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiffs respectfully request that the Court (a) release and discharge all persons who are involved in the review, verification, calculation, tabulation or any other aspect of the processing of the Proof of Claim Forms submitted herein, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims by Members of the Settlement Class arising out of such involvement; and (b) bar all Members of the Settlement Class, whether or not they receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to them as Authorized Claimants and approved by the Court.

---

[4] To the extent the actual fees and expenses are less than those estimated by Epiq in paragraph 36 of the Firenze Declaration, Epiq will only be reimbursed for those expenses incurred. The remainder will remain as part of the Net Settlement Fund for the benefit of the Settlement Class.

Finally, Lead Plaintiffs respectfully request approval of Epiq's document retention plan, under which Epiq will destroy all paper and electronic copies of Proofs of Claim and supporting documentation one year after all funds have been distributed. *See* Firenze Decl. ¶37(g).

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Distribution Order.

Dated: June 12, 2020
       New York, NY

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

/s/ *Frederic S. Fox*

Frederic S. Fox
Donald R. Hall
Melinda Campbell
Jason A. Uris
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**KAHN SWICK & FOTI, LLP**

/s/ *Ramzi Abadou*

Ramzi Abadou (admitted *pro hac vice*)
912 Cole Street, # 251
San Francisco, CA 94117
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

-and-

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
Alexander Burns (admitted *pro hac vice*)
Alayne Gobielle (admitted *pro hac vice*)
1100 Poydras Street

Suite 3200
New Orleans, LA 70163
Telephone: 504-455-1400
Facsimile: 504-455-1498

*Co-Lead Counsel for the Class*

**Certification of Compliance**

I hereby certify that the foregoing memorandum of law complies with the formatting requirements of Rule 2.D. of the Individual Practices of Judge John G. Koeltl and contains 3,527 words, excluding the cover page, certification of compliance, table of contents, and table of authorities.

Dated: June 12, 2020  /s/ *Frederic S. Fox*
New York, NY  Frederic S. Fox